730.   SOUTHERN RAILWAY COMPANY *v.* RUTLEDGE.

1. As an employee of a railway company does not, in this State, assume risks due to the negligence of his fellow-servants, it is his duty to obey a superior who is the alter ego of the corporation as to the work in hand, unless by such obedience the servant should expose himself to manifest hazard, or place himself in a plainly dangerous position.

2. Loyalty in the service of his employer, and forgetfulness of self, where both plainly appear, are not to be imputed as faults, to a servant engaged in carrying out the orders of the master, except where it also appears that the servant was unnecessarily rash or reckless. Whether a servant's seeming negligence is real and he should be held chargeable therewith, or whether it be due to the absorbing nature of his duties, is in every case a question of fact for the jury. Some risk must necessarily be taken in obedience to orders; and mere exposure to an extra hazard, under direct orders of a superior, will not defeat a recovery. It is the duty of the employer to direct and protect; the duty of the servant is obedience and performance.

Action for damages, from city court of Atlanta—Judge Calhoun. July 13, 1907.

Argued December 1, 1907.—Decided March 30, 1908.

*Dorsey, Brewster, Howell & Heyman,* for plaintiff in error.
*Hines & Jordan,* contra.

RUSSELL, J.   The defendant in error brought an action for damages against the Southern Railway Company for injuries alleged to have been sustained by reason of the fall of a telegraph post upon his body. It seems that several gangs of the defendant railway company's employees were engaged in repairing damages to telegraph lines, which had been caused by the storm and sleet. According to the evidence for the defendant, the plaintiff, without any necessity therefor, went under a telegraph post, which was being sawed down by other employees of the defendant, and was, perhaps, the cause of his own injury. On the other hand, according to the testimony for the plaintiff, he was directed by his immediate superior, the foreman of the bridge gang, under whom he labored and to whose orders he was subject, to get two shovels which were near the telegraph pole in question, and, while carrying out the orders of his superior, received the injury of which he complains. The testimony for the plaintiff further shows, that the post was supported and was being held by guy ropes, and that the purpose of those having the work in charge was to drop the lower end of this pole, when it was sawed off, into a hole in the

ground, which had been dug for that purpose, and not to allow it to fall at all; that this had been done with several other posts, and that there was no reason apparent why it could not be done with this post, and, therefore, nothing to put the plaintiff on notice of any hazard to be assumed by him in attempting to carry out the order of his boss in getting the shovels.

The evidence presented a conflict upon these two points: first, whether the servant was ordered into a place of danger by a vice-principal of the company; and secondly, whether there was anything to put the servant on notice of such impending danger as would have authorized him to disobey. It is clear that if the evidence answered the first of these two questions in the negative, the plaintiff would not be entitled to recover; but if the evidence authorized an affirmative answer to the first of these questions, and if the second should be answered in the negative, the plaintiff was entitled to the verdict rendered in his favor. The plaintiff testified, that he was told by Mr. Butler to go back to the post which was being sawed, to get two shovels to dig a hole to put up another post, and that by the time he got back there and started to get the shovels, the post fell on him, and the post and wires mashed him down, injuring his ankle. Butler was the foreman of the gang to which the plaintiff belonged; he employed and discharged the members of the gang. As to his knowledge of the danger, the plaintiff testified that he knew that they were cutting the posts off at the bottom, so as to drop them into a hole and set them up again. He knew that the hands were working on the post at that time, and that the shovels were under the post they were working upon, and that the posts were fairly new. He also testified, however, that while the pole was leaning over, the wires held it some; it was being held by men with ropes, and the men around the pole also were holding it, safely as it appeared to him. While, of course, the plaintiff assumed the risk of the breaking of any of the posts from the effect of the heavy slect upon them, it would seem from the foregoing testimony that he would have had the right to presume that the post would not be allowed to fall upon any one as a result of the sawing. According to his testimony, the pole was not only secured by ropes and supported by the wires, but several men were around, holding it. It appears that some one or more of the men must have turned the post loose, and a

6

contingency which this employee could not have foreseen occurred.

1. It was the duty of the defendant in error, as an employee, to obey the foreman, Butler, and do whatever he was told in regard to the work in hand, short of exposing himself to a manifest hazard, or of placing himself in a plainly dangerous position. We do not think that the circumstances which surrounded him were such as to indicate that he was exposing himself to any extraordinary peril in obeying the order; and for that reason, if the jury believed his testimony, his recovery could not be defeated by reason of the fact that his injury was occasioned by his exposing himself to danger. It of course devolved upon him to show that he was without fault, or he was not entitled to recover. We do not think that the obedience of this servant to his superior, who was the alter ego of the corporation as to the work in hand (in view of the fact that there was nothing in the circumstances which surrounded him to indicate that he assumed any extraordinary risk), should be either imputed to the plaintiff as a fault, or held to be a failure to exercise ordinary care.

2. Some point is made that the plaintiff testified, on cross-examination, that he went hurriedly for the shovels, without making a final survey of the condition of the post, and without inquiring how nearly it was sawed in two. We attach but little importance to this, in view of the other testimony in the case, and especially in view of the fact that a diligent, obedient servant should not be punished for his very diligence. The jury had the right to presume that the very absorption of this plaintiff in the duty of obeying promptly and without question the order of his superior may have withdrawn him from an overweening regard for his own safety. Some risks must necessarily be taken in obedience to orders, and the courts of this State have frequently held that mere exposure to an extra hazard under direct orders of a superior will not defeat recovery. It is the duty of the employer to direct and protect; the duty of the servant is obedience and performance. And while a servant is not required to expose himself to a known peril, sound public policy encourages (what the success of every master's enterprise requires) a zealous, and not a halting performance. As the plaintiff was the employee of a railway company, and did not assume any risks due to the negligence of his fellow-servants, we think that the verdict was authorized by the evidence,

and that the court did not err in overruling the motion for new trial.                              *                 *Judgment affirmed.*