# CASES

## DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

### AT THE

## OCTOBER TERM, 1909.

---

1695.   HOLSEY *v.* MACON, DUBLIN AND SAVANNAH
RAILROAD COMPANY.

The plaintiff's evidence authorized the inference that the employee whose homicide was the subject-matter of the suit was injured by the running of the machinery of the defendant company, and that he was free from fault; or that the proximate cause of his death was the negligent act of his fellow servants; and the court erred in granting a nonsuit.

Action for damages, from city court of Dublin—Judge Hawkins    December 18, 1908.

Argued March 11,—Decided October 5, 1909.

Idella Holsey sued the railroad company for the homicide of her husband, who was fatally injured while engaged as a brakeman in its employment.    She excepts to the judge's order granting a nonsuit.    From the evidence it appeared that the casualty resulting in the death of the plaintiff's husband took place at Dublin. The freight-train on which he was employed had just arrived at that point with a car-load of lumber in front of the engine, and the train crew were engaged in transferring this car to the rear of the engine, next to another car of lumber.    In order that this might be done, the car had been placed by the engine on a track where the other car was standing, and he and another employee, under the direction of the conductor, were pushing it back by hand, to make the coupling to the car further on down the track; while the engine seems to have gone back after the main train of cars.    The plaintiff's husband and the other employee started

the car to rolling, by pushing with their shoulders; and after that it rolled of its own momentum, as the track was down-grade. The plaintiff's husband got upon the car of lumber, for the purpose of applying the brake at the proper time. He walked to the front of the car, where the brake was located, which had a straight iron bar for a handle instead of a wheel. The speed of the car began to increase, and the brakeman applied the brakes, but for some reason it did not work, and the car kept on increasing in velocity. The conductor told the brakeman to hold the car, and the brakeman bent over the brake with all his might, but the speed of the car was not checked in the least, but kept on accelerating. When the moving car was within about 30 feet of the stationary car, the conductor again called to the brakeman "to hold that car," and, with his muscles already taut, the brakeman redoubled his efforts, but to no avail. By this time the car was going at the rate of about ten miles an hour, and hit the other car with such force that the lumber on the moving car was pushed off endwise, and pinned the brakeman between the lumber of the two cars and the brake, so that one end of the iron handle-bar of the brake was sticking in his stomach. The conductor and some bystanders got an ax and tried to cut loose the brake chain, but it was wrapped so tightly about the brake beam that they could not do so. While the injured brakeman was still pinned between the lumber and the brake, with the end of the iron bar penetrating his stomach, the engineer was signaled to come back and couple his engine to the cars; and he accordingly backed the engine, to which seven or eight cars were attached, and coupled to the cars and pulled them apart. This last coupling was made by actual contact with the cars, but it does not appear that the cars were moved when the engine and string of cars hit them in making the coupling. The injured brakeman was extricated by removing the lumber and pulling him out, after which time he lived for about half an hour. The petition alleged, that the defendant was negligent, (1) in not seeing that the lumber on the car on which the brakeman was killed was properly loaded, so as not to slide off endwise when being coupled to another car; (2) in not providing a safe and secure brake on the car, so that the car might be stopped when the brake was applied; (3) in ordering the heavily loaded car of lumber, supplied with an insufficient brake, turned loose to roll

of itself against the other car, instead of attaching the engine thereto·and pushing it back to make the coupling; (4) in ordering the brakeman up on the car in a dangerous position, wherein he was ignorant of the insufficiency of the brake; (5) in running the engine and string of cars back on him, after he was pinned between the lumber and the brake, with the iron handle-bar penetrating his stomach; (6) in not using a chain for making the coupling, so that the engine and the car to which it was being coupled would not come in actual contact with one another.

Hall & Fowler, C. A. Glawson, Ira S. Chappell, for plaintiff.

Minter Wimberly, for defendant.

RUSSELL, J.   (After stating the foregoing facts.)

The common-law rule that a servant, as a part of his contract of employment, assumes the ordinary and usual risks of the employment is subject to an exception in Georgia, when applied to common carriers by railroad.   Owing to the peculiar nature of the employment, the doctrine that the servant of a common carrier by railroad contracts to assume the risk of the negligence of a fellow servant has been abolished, but where the proximate cause of an injury is the negligent act of a fellow servant, the injured employee has a cause of action against the common master.   In order to bring himself within the benefit of this rule, the injured employee must show that he himself was free from fault.   Civil Code, §§2297, 2323.   The quantum of care exacted of the servant is ordinary care and diligence.   Central Railroad Co. v. Lanier, 83 Ga. 587 (10 S. E. 279).   While in some of the cases there are expressions such as that the servant must show that he was "wholly blameless" (Thompson v. Central Railroad Co., 54 Ga. 510), or that he did not "immediately or remotely, directly or indirectly, cause the injury or any part of it, or contribute to it all" (Prather v. Richmond & Danville R. Co., 80 Ga. 427 (9 S. E. 530)), these expressions simply mean that the servant must make it appear that he has used the utmost ordinary care and diligence, and do not mean that he must show that he has used extraordinary diligence. Central Ry. Co. v. McClifford, 120 Ga. 90 (5), 94 (47 S. E. 590); Macon R. Co. v. Joyner, 129 Ga. 686 (59 S. E. 902).

The employee of a railroad company, when suing for personal injuries, makes out a prima facie case by showing that he was injured through the running of the cars or other machinery of the railroad and that he was free from negligence or fault.   Or he

can make out a prima facie case by proving injury through the running or operating of the machinery, and then the negligence of the company, in which event it will be presumed that he was without fault.   In other words, when the employee shows injury, and either his freedom from fault or the negligence of the company, he has made out a prima facie case.   Of course, if in proving the injury it appears from his evidence either that he was not free from fault or that the master was free from negligence, it would be proper to grant a nonsuit, since both his own freedom from fault and the negligence of the company are essential to his cause of action.   *Atlanta & Birmingham Ry.* v. *McManus,* 1 *Ga. App.* 302 (58 S. E. 258) ; *Lucas* v. *Southern Ry. Co.,* 1 *Ga. App.* 810 (57 S. E. 1041) ; *Hubbard* v. *Macon Railway & Light Co.,* 5 *Ga. App.* 223 (62 S. E. 1018) ; *Southern Ry. Co.* v. *Rutledge,* 4 *Ga. App.* 80 (60 S. E. 1011) ; *Austin* v. *Central Ry. Co.,* 3 *Ga. App.* 775 (61 S. E. 998).   A restatement of these well known rules is justified only on the ground that it will help to a clear application of them to the case at bar.

Does the evidence show that the plaintiff was free from fault, or that the question as to whether he was free from fault should have been submitted to the jury?   If so, there can be no doubt that the court erred in granting a nonsuit, since, if he made this fact appear, there was a presumption that the master was negligent.   It appears, from the evidence, that the injured employee was in the discharge of his duty as a brakeman, intently engaged in the work at hand at the time he was injured.   Was he negligent, as a matter of law, in starting the car rolling down hill under the supervision and direction of the conductor?   If not, was he negligent in mounting the car, for the purpose of applying the brakes as it was his duty to do, or in remaining at his post of duty when a dangerous emergency arose and when the conductor yelled to him to remain there and "hold the car?"   We think the questions are answered in the asking.   The only theory upon which it could be contended that the brakeman was negligent was his failure to jump from the car when he discovered that the brake was not working; and even if this could be called negligence in any event, the direct command of the conductor in this instance justified him in not jumping; or at least it would take from his act in failing to jump the quality of negligence as a matter of law.

We do not mean to say that a direct command of the conductor would justify a brakeman in risking an obvious and apparent danger, but there was no such obvious or apparent danger in the present case. If the lumber had not slipped off endwise, the injury would not have been inflicted; and there was nothing to make it apparent that the lumber would slip off endwise. The cause of the lumber slipping off endwise was the combined result of the way it was loaded and the force of the contact with the cars; and the brakeman could hardly be charged with the ability to figure out, in the emergency, that if he remained at his post, this result would follow. The direct command of the conductor to stay there and hold the car was an assurance that he could do the act commanded, without risk of injury. *Alabama Great Southern R. Co.* v. *Fulghum*, 94 *Ga.* 571 (19 S. E. 981); *Fenn* v. *Seaboard Air-Line Ry.*, 120 *Ga.* 664 (48 S. E. 141); *Central Railroad* v. *DeBray*, 71 *Ga.* 406; *Mills* v. *East Tenn., Va. & Ga. Ry. Co.*, 87 *Ga.* 102 (13 S. E. 205); *Austin* v. *Central Ry. Co.*, supra.

But there is another ground upon which the case should have been submitted to the jury. After the brakeman was pinned between the lumber and the brake with the end of the brake handle-bar penetrating his stomach, the engine and seven or eight cars were backed on to the car. The place was on a down-grade. It is absolutely impossible to make a coupling between an engine and a string of cars and another car without considerable jar, even when the utmost care is used by the engineer; and especially is this true where the coupling is made on a down-grade track, instead of a level track. It is difficult to see why in any event the engine was backed on to the car while the brakeman was pinned in the manner mentioned above, for this did not extricate him from his perilous position. He was extricated by the lumber being moved. But if it was necessary that the car on which he was located should be moved, it should have been moved by hand, or else by the use of a coupling chain, and not by backing the engine and the cars directly onto that one on which the injured brakeman was located, with the iron handle-bar of the brake penetrating his stomach. While it is not entirely clear from the record just what effect this had on the brakeman's injuries, it does appear that he was alive at the time, and that even after he was taken out he lived for half an hour. A fuller investigation may disclose

that this conduct was not the proximate cause of the brakeman's injuries; but from the evidence as it appears in the record, the jury might have inferred that the train-crew was guilty of negligence toward the brakeman after he was in a situation where the slightest jar might cause his death. The case should have been submitted to the jury, and the judge erred in granting a nonsuit.          *Judgment reversed. Powell, J., dissents.*