## CHARLESTON.

L. O. MOTT, ADMINISTRATOR, _v._ JAMES DAVIS, AGENT, ETC.

Submitted March 7, 1922.    Decided March 28, 1922.

1.   EVIDENCE—_It is Not Error to Reject Evidence Having No Substantial Probative Value._

     On the trial of an issue before a jury it is not error to reject evidence having no substantial probative value thereon. (p. 618).

2.  NEGLIGENCE—*Evidence of Railroad Employe's Intoxication Competent on Contributory Negligence in Mitigation of Damages.*

In an action under the Federal Employer's Liability Act, for damages for personal injuries sustained by an employee while employed in interstate commerce, evidence tending to show his intoxication when injured is competent to go to the jury. on the question of his contributory negligence, not as constituting a complete defense, but in mitigation of damages. (p. 619).

3.  TRIAL—*Refusing Instructions on Matter Covered by Other Instructions Not Error.*

Instructions to the jury on only one of the main issues of fact, as to which the evidence is in any appreciable degree conflicting, and covered by other instructions given and embracing the entire concrete case, may properly be rejected. (p. 619).

4.  MASTER AND SERVANT—*Ordinary Risks of Riding Freight Trains Assumed.*

Where the duties of a railway employee require him to mount and ride moving freight trains, such employee assumes all the ordinary and usual risks pertaining to his employment, including the mounting and riding of such trains, but not extraordinary risks unknown to or not plainly discernible by him, and the rights and liabilities of the parties must generally be measured by the rules and principles pertaining to master and servant and not by those applicable to passenger and carrier. (p. 622).

5.  SAME—*Negligence Must be Proved.*

In such an action for personal injuries by an employee against his employer the fact of the injury does not render the employer presumptively negligent; generally the negligence of the master must be proven, and the rule res ipsa loquitur does not apply. (p. 624).

6.  SAME—*Instructions on Assumption of Risks, Held Misleading.*

If from the circumstances of the injuries to an employee of a railway company he could not have seen and appreciated the extraordinary movement of a train and the danger to which he was thereby subjected and which resulted in his injuries, instructions to the jury on the theory of assumption of risk from known and apparent dangers should be rejected as misleading and improper. (p. 624).

7.  SAME—*Negligence Within Federal Act Not Presumed.*

In an action for personal injuries under the Federal Employer's Liability Act, the alleged negligence of a railway company complained of must be proven by plaintiff by a preponderance of the evidence, and can not be presumed. (p. 625).

8.  TRIAL—*Court Should Not by His Charge Refer to Declaration to Determine Acts of Negligence Charged.*

In an action by an employee against a railway company under the Federal Employer's Liability Act, for personal injuries sustained, due to the alleged negligence of the defendant, the court should not by instructions on the subject of such negligence refer the jury to the declaration to determine what the acts of negligence charged against the defendant are. Such acts should be covered by or recited in the instructions. (p. 625).

9.  SAME—*Instructions Permitting Exclusion of Evidence Erroneous.*

An instruction to the jury from which they might infer that plaintiff in establishing the fact of defendant's negligence was limited to his own evidence to the exclusion of defendant's evidence, is misleading and erroneous. (p. 625).

10.  MASTER AND SERVANT —*Risk of Dangerous Method Directed Not Assumed.*

While as a general rule, if two ways are presented to an employee for the performance of his duties, one a safe way, the other dangerous, and he chooses the dangerous way, he thereby assumes the risk of the latter, yet if he has been directed by his employer to perform his duties in the dangerous way, the master becomes liable for the injuries sustained by the servant due to any extraordinary or unusual dangers unknown to him and to which he is subjected in the performance of his duties in the dangerous way. (p. 626).

11.  SAME—*Railway Employee Required to Mount Moving Trains. Not a passenger.*

The relationship of a railway company to its employee required to mount its moving trains in the performance of his duties, is that of master and servant, not that of passenger and carrier, and their respective rights and liabilities are to be determined by the law applicable to them in their proper relationship. (p. 626).

12.  SAME—*Instruction on Intoxication of Employee Falling Under Train Improperly Refused.*

If the proximate cause of the injuries sustained by a rail-

way employee was his use of intoxicating liquors, the railway company is not liable therefor; and an instruction to the jury so advising them, if there is appreciable evidence of the fact, is proper; but if the fact is controverted and such instruction is given on behalf of the railway company, it is error to reject an instruction proposed by the plaintiff, based on such conflicting evidence, telling them that though they may find the employee had taken a drink or so of liquor before mounting the moving train that injured him, they could not take that fact into consideration unless they believed that he would not have fallen under the train had he not drunk the liquor. (p. 626).

13.    SAME—*Railway Employee Riding According to Custom Entitled to Protection.*

Although an employee of a railway company may have given an unreasonable and improper construction of the orders of a superior officer in reference to mounting and riding moving trains in the discharge of his duties, and because thereof rides from the place of his employment to an intermediate point or station, breaking the journey, and there resumes his journey on another train according to the custom of employees, he is entitled to protection from unnecessary and unusual movements of the train due to employees generally because of such established custom known to the railway company. (p. 626).

Error to Circuit Court, Mineral County.

Action by Mary R. Harness, administratrix of the estate of C. E. Harness, deceased, against the Baltimore & Ohio Railroad Company and Walker D. Hines, Director General of Railroads, in which L. O. Mott, as administrator, was substituted for the plaintiff and James Davis, Agent, etc., was substituted for the defendant Walker D. Hines and for the Railroad Company. Verdict of not guilty and judgment of nil capiat against the plaintiff and the plaintiff brings error.

*Reversed and remanded.*

*Harry G. Fisher,* for plaintiff in error.
*Emory Tyler* and *Wm. G. Conley,* for defendant in error.

MILLER, JUDGE:

The case on the present hearing is substantially the same

as to pleadings and proofs as when presented on a former writ of error, then styled *Mary R. Harness, Adm'x.* v. *Baltimore & Ohio Railroad Company et al.,* reported in 86 W. Va. 284.    On the last trial in the circuit court the name of the present plaintiff was substituted for that of Mary R. Harness, Administratrix, and the name of the present defendant for that of Baltimore & Ohio Railroad Company et al., due to the change in the director general or agent designated by the President pursuant to the Transportation Act of 1920.    The rules and principles enunciated on the former hearing, and in the written opinion and mandate of the court must therefore be regarded and applied as the law of the present case.

The result of the new trial awarded the plaintiff on the former hearing was the same as on the first trial, except that on the first trial the court directed a verdict for the defendant, while on the second trial the case was submitted to the jury on instructions by the court, resulting in a verdict of not guilty and the judgment of *nil capiat* against the plaintiff, the subject of the present writ of error.

Counsel for plaintiff, in his original brief, points out several particulars in which he thinks the case for the plaintiff was greatly strengthened by the evidence adduced on the last trial.    For example, he says that the custom of employees riding trains between Piedmont and Keyser established on the former trial was admitted by the agents and officers of the railroad company on the second trial and was shown to have existed practically since the railroad was constructed and operated.    And further that it was shown that this custom extended to others than railroad employees. That it was also shown that nearly all the members of the crew of the train that killed Harness knew of the existence of this custom at Piedmont.    Still another point on which counsel conceives his case was improved on the second trial, was that it was shown that the passes issued to Harness and his fellow workmen were good only on passenger trains, while their orders from their superior officers were to ride freight trains, or anything they could get in on, so as to save the time of service, an act of negligence in itself justifying

recovery, as they were entitled to a safe means and method of transportation in going to and from their work as car inspectors at Bond.

In our opinion it will be unnecessary to regard these points of supposed vantage except as they may be involved incidentally in disposing of the several other points of error relied on for reversing the judgment. These relate in the main to the admission and rejection of evidence, and to the giving and refusing of instructions to the jury.

The evidence said to have been erroneously rejected, and covered by plaintiff's bill of exceptions No. 2, was that of O. L. Bosley, C. N. Brown and Tom F. Kenney, to the effect that they had seen other persons than employees on many occasions boarding and riding moving freight trains at Piedmont and Keyser. We do not think the rejected evidence of these witnesses was sufficient to establish a custom imposing any liability upon the railroad company to the general public, except to not wantonly and wilfully do such person any injury. Unless received as passengers for hire, such persons would be mere trespassers; and we can not conceive of a custom of a railroad company receiving passengers on freight trains at any station or intermediate point. At all events the plaintiff could not have been prejudiced in any way, for he was allowed to and did introduce all evidence offered bearing on the question of the custom of employees of the railroad company to mount and ride moving freight trains at and between the designated stations. The right to introduce such evidence and to have the jury pass upon the fact of such custom was one of the questions adjudicated upon the former hearing, and the admission of such evidence served all the requirements of the plaintiff. We find no prejudicial error in the rejection of this evidence. No authority is cited by counsel in support of this exception. His argument is, that as the court would not declare as a matter of law that there was a custom at Piedmont for employees to ride moving freight trains between that point and Keyser, the testimony relating to the custom of others than employees should have been admitted in order that the jury might have had the opportunity to pass upon all the facts. But what weight

or relevancy such evidence could have had on the issue is not pointed out.

Covered by the same bill of exceptions is the motion of the plaintiff to exclude all evidence theretofore introduced by the defendant relative to the question of the drinking by Harness on the day he was killed. We see no error in this ruling of the court, and no argument was submitted in briefs or in oral argument in support of this part of the exception. As one of the questions involved and submitted to the jury was that of contributory negligence due to Harness' alleged drinking of intoxicants, not as affecting recovery, but going to the reduction of damages under the federal employer's lability law, the evidence was quite pertinent, and we think was clearly admissible on that question.

Plaintiff's bill of exception No. 3 presents two questions. The first relates to the ruling of the trial court in sustaining defendant's objection to the answer of engineer Riley to a question propounded by plaintiff's counsel on cross examination, to the effect that he had seen persons getting on other parts of the train at Piedmont, but he could not tell whether they were employees or not; and to the action of the court in overruling plaintiff's objection to another question propounded to the same witness on re-direct examination, and his answer thereto, as follows: "Q. 7. Suppose you add to that two or three drinks of liquor, would that make it more dangerous? (Referring to the danger of boarding moving trains). A. That just depends upon who took it." Of course this evidence had reference to the alleged drinking of Harness, and bore to some extent on the question of his contributory negligence in riding or attempting to mount the moving train. On this question the evidence was somewhat relevant and pertinent, and we see no error in the ruling of the court admitting it.

As already indicated, the main points of error relied on involve the several rulings of the court on the giving and refusing of instructions, and we may observe, before disposing of these rulings, that they all should have conformed to the rules and principles laid down in the opinion de-

livered on the former hearing, for they constitute the law of the case and are controlling here.

The plaintiff proposed some thirty-two instructions. Those given were numbered 3, 5, 6, 9, 12, 18, 21, 22, 25, 28, and 31. The remainder were rejected, and were numbered 1, 2, 4, 7, 8, 10, 11, 13, 15, 16, 17, 19, 20, 24, 26, 29 and 32. But numbers 14, 23, 27 and 30 are not in the record and can not be considered.

The defendant proposed some twenty-four instructions, of which numbers 2, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 20, 22, and 23 were given; the others were rejected.

Plaintiff's rejected instruction No. 1 was a direction to the jury to find for plaintiff and assess his damages according to the rule stated in his given instruction No. 18. His rejected instruction No. 2 likewise assumed that custom justifying Harness in boarding the moving train at Piedmont with notice to defendant had been established by the evidence and that as matter of law plaintiff was entitled to a verdict in some amount and would have told the jury that if after Harness was so lawfully on the train, the defendant was negligent in causing the train to jerk and lurch and Harness thereby to be thrown under the train, they should find a verdict for the plaintiff. So with respect to plaintiff's instruction No. 32, it is predicated on the supposed uncontradicted evidence of the custom at Piedmont of employees to mount moving freight trains. Upon the former hearing, we held upon the same evidence of such custom by employees, that the question whether defendant in view of such custom owed its employees a duty to operate its trains through such station so as to avoid unreasonable and extraordinary risks endangering their life and safety, and whether such duty was breached in the particular instance, were questions of fact for the jury. In our opinion these instructions, particularly No. 1, were beyond the rule laid down on the former hearing and were properly denied. It is the contention of plaintiff's counsel that in view of the holdings of the Supreme Court of the United States in *C. & O. Ry. Co.* v. *Proffitt*, 241 U. S. 462, 60 Law Ed. 1102, 1106, there is no good reason why instruction No. 2, and

also instruction No. 4, should not have been given. Assuming those instructions and instruction number 32 to have correctly stated legal propositions, they were fully covered by instruction No. 31, which, as we view the case, substantially covers the concrete case presented by the pleadings and proofs, which alone would have justified rejection of instructions 2, 4 and 32. In the case relied on as justifying instructions 2 and 4, the controlling question was whether the method employed in that particular case of making up the train which did the injury was the usual and orderly method, and was known to plaintiff when accepting employment, and whether the method was one which a reasonably careful employer would have adopted, and was known to plaintiff, and was one of the risks assumed by him when accepting employment. It was decided that the defendant had no right to complain of modification by the trial court of this instruction so as to present these questions.

Plaintiff's rejected instruction No. 7 assumed as established by the *uncontroverted evidence* the custom of employees boarding moving trains at Piedmont, and submitted to the jury that if they believed from the evidence that the deceased got upon the train that killed him, from the brick platform in front of the station at Piedmont used by passengers, then he chose a safe place from which to board said train, and that if said platform was wet, and he had his lunch basket on his arm, and either of these interfered with his getting on the train, then the defendant was obliged to so run and manage its train that he might not thereby be prevented from getting on with safety. The vice of this instruction, as well as that of No. 13, also rejected, is that it assumes that defendant owed the same duty to deceased and other employees that it owed to passengers at that point. The deceased was not a passenger at Piedmont when he undertook to board the train. Instructions Nos. 13 and 17 would have made it an act of negligence on the part of defendant justifying recovery under the pleadings and proofs for not having issued passes to the deceased and orders to the train crews of the trains

Harness would ride upon to accept him as a passenger. Number 16 would have rendered defendant liable if the jury found Harness got aboard the train and was killed by the method of operating it, and made the duty of the defendant to him the same as that owed a passenger. Harness assumed all the ordinary risks of riding the moving train he undertook to board, and the railroad company owed him no duty except to not subject him to extraordinary risks of which he had no notice or should not have observed. Such we consider to be the law of the case as laid down in the opinion on the former hearing. Moreover, the rights of the plaintiff in these particulars were fully covered by plaintiff's instruction No. 31.

So also with regard to plaintiff's rejected instructions numbered 10, 11, 15, 19, 20, and 29, we think they were fully covered by instruction No. 31, and there was no error in rejecting them. Instruction No. 31, substantially covered plaintiff's whole case. It was as follows:

"The Court instructs the jury that if they believe from the evidence that the defendant railroad company was engaged in interstate commerce on the 12th day of September, 1918, and that Charles E. Harness was employed by it as a car inspector in such commerce at Bond, and was in such employment on said day; and shall further believe that the said Harness lived in Keyser and had instructions from his superiors to return to Keyser on the first thing he could get in on, after his day's work was completed, in order to save the defendant company from paying any more overtime than was necessary; and shall further believe from the evidence that a custom, habit or usage existed of employees of said railroad company to get on and off of moving freight trains at Piedmont, in going to and returning from Keyser, and that such custom, habit, usage or practice was of such notoriety and continuity that defendant's managing agents and officers must have known of it; and shall further believe from the evidence that said Harness was not forbidden to use freight trains in order to return home, as quickly as possible, and that in obedience to such instructions, as to save overtime, the said Harness and his co-inspectors be-

lieving they were authorized to do so, in order to save the
defendant from paying more overtime than was necessary,
after their day's work was completed on said 12th day of
September, 1918, went to Piedmont on a helper engine of
the defendant company with the purpose and intention of
completing the trip on it to Keyser 'on the first thing they
could get in on' and went immediately to the tower opera-
tor and inquired what was the next train to Keyser and
were informed it was an east-bound freight, running ahead of
the accommodation train, and which would reach Keyser
ahead of it; and that when said freight train came along it
was proceeding at a rate of speed reasonably safe for rail-
road men, accustomed to such work to mount it, and the two
Bosley boys mounted it from the platform in front of the
station, and the said Harness attempted to, but failed and
fell under it and was killed; and they shall further believe
from the evidence that because of its knowledge of the prac-
tice and custom of its employees to get on and off moving
freight trains at Piedmont, coupled with the instructions and
directions given to the said Harness to return from work
on the first thing he could get in on, that it was the duty of
the defendant, under the circumstances, to use due care in
the operation of its trains through Piedmont so as to avoid
unreasonable or extraordinary risks which might endanger
the life and safety of an employee lawfully on its property
at that point, and bent on mounting the train in accordance
with the recognized custom, and that the defendant, through
its servants and employees, violated such duty by a sudden
and unnecessary jerk or bump of the train which threw the
said Harness under the train as he was in the act of board-
ing it, and after said Bosleys had safely mounted said train,
and that such jerk, bump or forward movement of the train,
was such that the said Harness could not have anticipated
it, then the plaintiff is entitled to recover in this case, even
though the jury further believe from the evidence that the
said Harness was guilty of some negligence which contribut-
ed to his death.    Because if the jury find that the defend-
ant owed said Harness a duty, under the circumstances of
this case, to operate its freight trains through Piedmont with

due and reasonable care and safety so as to avoid unreasonable or extraordinary risks which might endanger the life and safety of its employees lawfully on its property at Piedmont and bent on mounting the train in accordance with the recognized custom, and that injury resulted therefrom, the violation of such duty would be negligence, and contributory negligence on the part of the injured person would not defeat his right to recovery but would only go to the question of damages.''

Instruction No. 26 was rightly rejected. It would have told the jury that if the death of Harness was other than accidental, the burden was upon the defendant to prove by a preponderance of the evidence that his death resulted from a cause beyond defendant's control, thereby involving the rule of *res ipsa loquitur,* not generally applicable as between master and servant, or employer and employee.

It remains to consider and dispose of plaintiff's exceptions to the instructions given for defendant. Of these we think numbers 2, 5, 7 and 10 were clearly bad and not in accordance with the principles laid down on the former hearing. Each, in different forms, would have told the jury in substance that though defendant was found guilty of negligence in operating the train that killed Harness as alleged, yet if in the face of danger so apparent and obvious that an ordinarily prudent person under similar circumstances should have observed and appreciated them, he attempted to board the moving train that killed him, then he assumed the risk and danger, and they should find for defendant. Manifestly the case was lastly tried on the theory of these instructions. Under the Federal Employer's Liability Act, an employee of a railroad company does not assume extraordinary risks and dangers not known to him, and if the employer is guilty of subjecting him to such dangers, his contributory negligence will not excuse the railway company for its negligence, but will go in mitigation of damages only. As said by the authorities, assumption of risk applying to the ordinary and apparent dangers, and contributory negligence ,constitute two separate and distinct defenses, the one going to the entire defense of the action, and the other to the mitigation of

the damages only; and this distinction should always be kept in mind in cases in which they are involved. In the present case, from the very nature of the case, Harness could not have been aware nor have seen and appreciated the dangers of a sudden and unusual movement of the train doing him the injury, and this being so, instructions that would have excused defendant wholly, if the deceased was found guilty of contributing to his injury, should have been refused. *Harness* v. *B. & O. R. R. Co., supra,* and cases cited; *Cincinnati N. O. & T. P. Ry. Co.* v. *Thompson,* 236 Fed. Rep. 1; *Ches. & Ohio Ry. Co.* v. *Proffitt, supra.*

Instructions numbers 4 and 20, given for the defendant, were apparently bad for limiting the right of plaintiff to a showing that defendant's engineer *unnecessarily* caused the train to give the unexpected jerk or bump complained of. We do not think this is the law. If the jerk or bump was an unexpected and extraordinary one, it could not have been known to decedent beforehand, and was not one of the risks assumed by him. Moreover, the positive testimony of the engineer was that, if such a jerk or bump was given, it was unnecessary, and there is no evidence that such an extraordinary movement of the train was necessary, wherefore also erroneous. According to the plaintiff's evidence, Harness had orders from his superior officer which in effect required him to board moving freight trains, and though in his employment he assumed the ordinary and apparent risks, and those known to him, he did not assume the extraordinary ones. He had the right to obey those orders, and thereby assumed only the apparent and obvious risks incident to a proper and careful operation of the train. *Coal & Coke Ry. Co.* v. *Deal,* 231 Fed. Rep. 604.

Instructions numbers 8 and 9, though abstract, we think good in stating correctly general propositions of law. Number 8 simply told the jury that the negligence of the defendant could not be presumed, but should be established by plaintiff, by a preponderance of the evidence. Number 9 is a definition of negligence in law. Certainly these two instructions, though abstract and not referable to the specfic facts in the case, contain correct legal propositions.

Instruction number 11 is good in law, in telling the jury that if they find from the evidence that Harness lost his life wholly through his own negligence, want of care and misconduct, and without proof of any negligence on the part of defendant, under the act of Congress on which the suit was brought, they should find for defendant. But it was not the proper practice for the court to refer the jury, as this instruction does, to acts of negligence charged in the de- claration, leaving it to the jury to determine therefrom what such acts of negligence were.

Instruction number 12, though substantially good, is sub- ject to the criticism that it apparently limits the plaintiff to his own evidence on the question of the preponderance of the evidence in his favor on the question of defendant's negligence. He was entitled to anything appearing in the defendant's evidence tending to show its negligence. *State* v. *Manns,* 48 W. Va. 480; *State* v. *Clark,* 51 W. Va. 457, 462; *State* v. *Snider,* 81 W. Va. 522, 528.

Instructions numbers 13 and 14 we think are erroneous in limiting plaintiff's right of recovery to "specific orders" or "positive directions" of Harness' superior officer to board moving freight trains, and telling the jury that if without such orders he chose to board moving trains in place of the safer method of using trains stopping at Bond where he was employed, he assumed the risk incident to the unsafe course and the jury should find for the defendant, thus ignoring the general orders given by Harness' superior of- ficer to come on the first train he could get in on, and in- terpreted by him and others as requiring them to use any train, passenger or freight, that would enable them to get in. He had the right to obey such orders without being negligent. *Alabama Consolidated Coal & Iron Co.* v. *Heald,* 171 Ala. 263; *Holsey* v. *Macon, D. & S. R. R. Co.,* (Ga.), 65 S. E. 690, 691.

Instruction No. 15 was properly submitted, as there was some evidence of a conflicting nature on the fact of a cus- tom among the employees at Piedmont to board moving trains in going to and from their places of employment.

Instruction No. 16 was good, and properly propounded

to the jury that Harness was not a passenger, but an employee whose duties contemplated his riding freight trains. It told the jury that if the jerk or bump, if it occurred, which caused Harness to fall from the train, and which caused his death, was ordinary and not an unusual and extraordinary movement of the train, Harness assumed the risk, and if he thereby lost his life, the jury should find for defendant. Plaintiff's counsel says that defendant owed decedent the duty to safely carry him to Keyser, his destination. This would put him in the position of a passenger, which he was not, and relieve him of the assumption of the ordinary risks assumed in his employment.

Instruction number 22 is good and was properly given to the jury. In substance it told the jury that, if after riding the helper engine from Bond to Piedmont on the day of his death, Harness left the defendant's premises and crossed the Potomac River into Westernport, Maryland, where he purchased and drank some intoxicating liquors, and that when he afterwards attempted to board the train that killed him, he was under the influence of such intoxicating drinks, then the jury should consider these facts along with all the other facts and circumstances, in determining whether he lost his life through the negligence in whole or in part of the defendant, or wholly through his own negligence, and if the latter they should find for the defendant. But this instruction having been given in charge to the jury, the plaintiff was entitled to have had submitted to the jury his instruction number 8, rejected, which properly would have advised the jury, that although they might believe that before Harness mounted the train he had taken a drink or so of liquor, they could not take that fact into consideration unless they believed that he would not have fallen under the train had he not drunk such liquors.

The remaining instruction given on behalf of defendant and covered by plaintiff's bill of exceptions is number 23. We think it is clearly bad, if for no other reason than that it ignores plaintiff's theory of an established custom at Piedmont of mounting and riding moving trains. It may have properly submitted to the jury the question whether Har-

ness and his fellow workmen gave a reasonable and proper construction of the order of Burk, their superior officer, regarding the use of engines and trains to get to and from their place of employment; but if so, and there was a custom at Piedmont for employees to mount and ride moving freight or other trains, Harness was entitled to the protection to which that custom entitled employees. It was not the ride from Bond to Piedmont that did him the injury; he reached Piedmont in safety, and once there, he was entitled, according to the custom, to use any train for the rest of his journey that other employees were accustomed to make use of, to get to his destination, and to have all the protection which by reason of that custom the defendant owed him. *Simpson* v. *Carter Coal Co.,* 79 W. Va. 365.

For the errors so found in the conduct of the trial below, we reverse the judgment, set aside the verdict and award the plaintiff a new trial.

*Reversed and remanded.*