# CHARLESTON.

### GEORGE D. THOMAS *v*. B. M. LUPIS.

Submitted February 15, 1921.    Decided February 22, 1921.

> DAMAGES—*New Trial—$8,000 for Injury to Face and Head Not Shown to be Permanent Held Excessive; Excessive Verdict Held Ground for New Trial.*
>
> A verdict for damages for personal injury, based upon evidence not sufficient to show with reasonable certainty the extent or permanency of the injury, and so excessive as to indicate passion, prejudice, partiality, mistake, or lack of due consideration, should be set aside upon motion for a new trial.

Error to Circuit Court, McDowell County.

Action by George D. Thomas against B. M. Lupis. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Strother, Taylor & Taylor,* for plaintiff in error.

*Anderson, Strother, Hughes & Curd,* for defendant in error.

LYNCH, JUDGE:

Complaining of a verdict and judgment of $8,000 rendered against him, defendant by this writ of error seeks reversal of such judgment and the award of a new trial. The basis of the recovery was an injury sustained by plaintiff as a result of an automobile accident due to the alleged negligent operation of defendant's car.

On the afternoon of June 7, 1919, plaintiff, an employee of the Welch Cash Store, left Welch in a Ford truck to deliver a load of groceries at Premier, a neighboring town in the same county. With him was a fellow employee of the same company. A short distance from Welch, defendant overtook them while driving a new touring car which he recently had purchased. Accompanying him was his nephew, a young man twenty years of age, who was driving the machine, defendant not yet having learned to drive. Both defendant and his nephew are Italians employed by the McDowell County Na-

tional Bank in its foreign department. The two cars were proceeding in the same direction, and defendant, desiring to pass the truck, sounded his horn several times to notify plaintiff of his intention. The latter signaled in response, and without looking back drew off to the right of the road in order to afford sufficient room for the other car to pass, at the same time reducing his speed to 6 or 8 miles an hour. Defendant's speed at the moment of passing was about 15 miles an hour. The road at that point is about 18 or 19 feet in width, bounded on the left by a hillside and on the right by a sharp declivity. Plaintiff turned so far to the right that only two of his wheels remained on the concrete road surface, the other two being on the dirt border and within one and a half or two feet of the declivity. The width of the truck which he was driving was only five feet two inches from the outer edge of one hub cap to the outer edge of the other, thus leaving ample room for defendant's car to pass. But in some unaccountable manner the latter did not avail himself of the full space thus afforded him, but passed in exceedingly close proximity to plaintiff's truck, so close in fact that plaintiff and his companion say they felt a jar at the instant of passing, and immediately the truck and its occupants went over the cliff, the former turning entirely over and striking on its wheels. It was in this fall that plaintiff received the injury for which he sues.

His theory of the accident is that the jar was occasioned by contact between the right rear hub of defendant's machine and the left rear hub of the truck. Only two witnesses saw the accident and they were 75 feet in front of the two cars and approaching them in a wagon from the opposite direction, but had driven to the side of the road in order to give the cars room to pass. Both testify that defendant, in attempting to pass plaintiff, drove his machine so close to the truck that they expected to see his right front wheel strike it. It did not do so, however, but they positively assert that his rear wheel "hubbed" the left rear wheel of the truck, thereby causing the jar of which plaintiff and his companion spoke. A blacksmith at the side of the road, who witnessed part of the affair, also testified to his expectation that the front wheel would strike the truck, but upon seeing it pass safely, he turned

to re-enter his shop and did not witness the actual contact of the rear wheels, if any occurred.

In reply, defendant and numerous witnesses testify to the physical impossibility of such contact without leaving some kind of a mark on his car. It is well established by proof that his rear fender extends about three inches beyond the outer edge of the hub cap, and that it bore no mark or scratch of any kind or character. Indeed, the only mark discovered on the car was a dent in one of the hub caps, located by several witnesses as on the left side, and by one, who examined the car immediately after the accident, on the right side, though the latter witness did not remember whether it was on the front or rear wheel. There is positive testimony of several witnesses, including defendant and his nephew, that the hub caps were not changed after the accident. And defendant contends that even if the dent was on the right side of the car, the injured hub cap could not have come in contact with the truck without leaving some mark on the overlapping fender. He and his nephew unqualifiedly deny that they in any manner struck plaintiff's truck, and state that they had completely passed it without noting any loss of his control over it, and did not know that an accident had occurred until they heard the crash of the fallen truck. This is supported to some extent by one of the two witnesses who saw the whole occurrence, who testified that plaintiff's car was so close to the edge of the road at the instant of the alleged contact that "it looked like the front wheels were breaking at the time." And in response to the question, "In other words, they were going over before the automobile struck it?" he answered: "Well, it looks to me like it would have went over."

Since we are compelled to award a new trial upon another ground, we shall express no opinion at this time upon the physical possibility or impossibility of contact between the cars under the circumstances narrated, for the facts disclosed upon the retrial may differ from those now before us. But the verdict clearly is excessive and without foundation of evidence to support it. Undoubtedly plaintiff's injury was painful, indeed potentially dangerous. When the truck overturned

a piece of the frame hood over the seat entered the left side of his face, near the temple, and ranged downward to the right until the tip protruded slightly through the roof of the mouth. He was taken immediately to a hospital for treatment. Dr. Hicks, the physician who removed the stick and attended plaintiff during his recovery, described the course of the sliver as entering immediately above or below, he did not remember which, "the zygomatic process of the malar bone, and ranged downward to the right towards the roof of the mouth, and if I remember correctly, the tip probably made its exit, or there was some evidence of it, into the roof of his mouth." He placed plaintiff under an anaesthetic and removed as much of. the foreign substance as he could discover, and after ten days plaintiff was able to leave the hospital. The wound, however, continued to suppurate, and about ten weeks later Dr. Hicks reopened it and found a large fragment overlooked by him at the time of the first operation. After the second operation the wound healed completely.

There were no other injuries worthy of note, mere abrasions on shoulder and hip. which the physician "disregarded." The cheek bone itself was uninjured, but the portion of bone lying under it and forming the antrum, "a little cavity here in the cheek," was pierced. That, however, the doctor testified, has since "filled up." Some of the small nerve filaments of the face were destroyed, but these, he said, were improving when plaintiff left the hospital and "ought to have gotten all right." The physician further testified that within a few days after plaintiff was dismissed from the hospital "he would be in a condition to go ahead and drive a truck," but he would not advise "any hard work or work requiring physical exertion for a few weeks." In other words, he regarded the injury as more or less temporary, which "ought to have gotten all right." There was no injury to the eye. Plaintiff testified to no present discomfort or inconvenience from the wound other than to say "sometimes this place will hurt me something like a headache, with a hurting feeling, and my shoulder hurts me at times." He was prevented from resuming his work for several weeks; in fact he testifies he did but little work till Jan-

uary 15, 1920, six months after the accident. But his attorney expressly disclaims a desire to recover for loss of time by reason of the accident, and introduced testimony of that character only "for the purpose of showing the extent of the injury and the disability occasioned thereby." There is no proof whatever showing permanent injury resulting from the accident. At the time of the injury plaintiff was receiving a salary of $175 a month, but he is now working at Gary in McDowell County and does not disclose the nature of his employment or the salary or wage he is receiving. It is necessary that there be some testimony to guide the jury in arriving at a just determination of the extent of the injury suffered. They should not be permitted to guess at random. In the absence of such proof there is nothing upon which a verdict of $8,000 can stand, and therefore it must be set aside and a new trial awarded. *Steel* v. *American Oil Development Co.,* 80 W. Va. 206; *Chafin* v. *N. & W. Ry. Co.,* 80 W. Va. 703.

The questions propounded by plaintiff for the purpose of eliciting information with respect to the dangers attending the administration of an anaesthetic, and responses of the witness thereto, were irrelevant to the issues involved and therefore improper. They serve no good purpose in cases of this character and may improperly influence or prejudice the jury. The anaesthetic undoubtedly was necessary in this instance and no harm resulted from its use. As to whether such questions and answers alone would constitute reversible error, we express no opinion, but for reasons stated repetition should be avoided.

The court properly modified plaintiff's instruction by the elimination therefrom of the words, "or otherwise," for the only ground of negligence charged in the declaration is that defendant improperly came in contact with plaintiff's truck and thereby caused it to go over the embankment. No alternative ground is relied on, and for that reason the modification was proper.

Of eight instructions requested by defendant three were given. The one directing a verdict for defendant was properly refused, inasmuch as the evidence was such as to constitute a *prima facie* case of negligence, which required submission to

the jury as ultimate triers of disputed facts, without such specific direction as to their finding. To determine what weight and force the evidence was entitled to clearly was within their province. The third instruction was properly refused because covered by defendant's second instruction given. The other three also were properly refused, first, because there is no substantial evidence of plaintiff's contributory negligence; second, because they are embodied in effect in the second and third instructions given, which require plaintiff to prove by a preponderance of the testimony that the injury was caused by the negligence of the defendant and that the striking of the truck by defendant's car was the proximate cause of the injury. These two instructions, given, by necessary implication require a finding of no contributory negligence, for in order to arrive at the conclusion that the striking of plaintiff's truck was the proximate cause of the injury, it is necessary to exclude contributory negligence as an intervening cause. But as a matter of fact there is no evidence to support the instructions refused. The nearest approach to it is found in the testimony of W. R. Carter, one of the two witnesses who saw the accident, who said it looked as if plaintiff would have gone over the embankment even if defendant had not struck him. But this is a mere expression of opinion, and without more would scarcely show that plaintiff was contributorily negligent in turning so far to the right in order to give defendant ample space in which to pass.

Our order, therefore, will reverse the judgment, set aside the verdict, and remand the case for retrial.

*Reversed and remanded.*