MRS. FRANK HAZELRIGS *v.* CITY OF HUNTINGTON

(No. 8131)

Submitted November 20, 1935. Decided December 14, 1935.

LITZ and WOODS, JUDGES, dissenting.

*Frank Eaton,* for plaintiff in error.
*Perry & Perry* and *Lilly & Lilly,* for defendant in error.

KENNA, JUDGE:

In an action of trespass on the case, Mrs. Frank Hazelrigs obtained a judgment in the Circuit Court of Cabell County for $10,000.00 against the City of Huntington. The recovery was for injuries sustained on the 13th day of May, 1933, from a fall due to the defective condition of the street on Fifth Avenue between Eighth and Ninth Streets. The single assignment of error urged by the City of Huntington is that the trial court improperly permitted Dr. A. K. Kessler, who had treated the plaintiff shortly after the accident and had examined her shortly before the trial, to reply to a hypothetical question propounded by counsel for the plaintiff.

Dr. Kessler furnished the only medical or surgical testimony that was adduced on behalf of the plaintiff. The hypothetical question complained of was propounded at the close of the case when Dr. Kessler was recalled by the plaintiff and the following questions were put to him resulting in the answers and objections as given:

"Q. I believe you are the same Doctor A. K. Kessler who gave evidence in this case, this morning?
A. I am.
Q. Now, Doctor assuming that the plaintiff, Mrs. Hazelrigs, was in good health prior to the injury, the 13th of May last year, and had never had any discomforts or affections with reference to her sexual organs, or any of them, and taking into consideration the injuries you saw and you have described to the jury, tell the jury whether or not, what in your opinion was the cause of the condition of her womb as you found it and as you saw it on your examination two days ago?
A. Read that question again, please.
Q. I am asking you, Dr. Kessler, assuming that the plaintiff, Mrs. Hazelrigs, was in good health previous to the injury, the 13th of May, last year, and had never had any discomforts or affections with reference to her sexual organs, or any of them, and

taking into consideration the injuries you saw and you have described to the court and jury, tell the jury whether or not, or what in your opinion was the cause of the condition of her womb as you found it and as you saw it on your examination a couple days ago?

A. I can not say just what caused her conditions a few days ago, or the condition that I found a few days ago.

Q. Was it probable that was occasioned by the injuries you saw?

By Mr. Graham

I object to this question.

(Objection overruled, to which ruling of the court, defendant, by counsel, excepted)

A. (No response)

By General Lilly

Q. Just make any statement you have in mind in regard to that, Doctor?

By Mr. Graham

I object to this question in that form.

(Objection overruled, to which ruling of the court, the defendant, by counsel, excepted)

A. Now just what is your question, please?

By General Lilly

Q. My question is, assuming, Doctor, that she was in normal health previous to this injury, and assuming further, Doctor Kessler, that on the 13th day of May, last year, she fell suddenly to the ground or on the pavement and was injured in the condition you found her; assuming the facts I have suggested and taking into consideration her condition as you found her, state whether or not the condition you found her womb in the other day on your examination was probably caused by a fall?

By Mr. Graham: We object to the question as amended.

(Objection overruled, to which ruling of the court the defendant, by counsel, excepted.)

A. It could have been. I think it could have been caused by a fall.

By General Lilly

Q. Now is there anyway to correct that condition, and if so, what?

A. We have treatments for that condition, but the only sure and permanent way is to operate. The way to do that is to operate, go in there and fix the uterus in position, by taking up the ligaments that have been torn loose and fix up that condition, which would require an operation.

Q. Can that be done through the vagina or would it require an abdominal operation?

A. It requires an abdominal operation.

Q. Is that what we call a major operation, Doctor Kessler?

A. Yes, sir.''

It will be observed that in the question that Dr. Kessler was finally permitted by the court to answer, reference was made to *a fall* and not to *the actual* fall that the plaintiff had suffered on the 13th day of May. It will be further observed that the answer of the witness followed the suggestion of the question, the answer being ''It could have been. I think it could have been caused by *a* fall.'' It may be urged that it could reasonably be inferred that the fall sustained by the plaintiff on the 13th day of May was the fall intended to be referred to and embraced in the question. At the same time, the language used certainly leaves room for the witness to base his reply upon that, or any other fall. The answer of the witness clearly demonstrates the vice of the question, because, in his reply, there is nothing to indicate that his opinion was restricted to the fall actually sustained by the plaintiff. He says that her injuries could have been caused by a fall. We are of the opinion that, as the disputed question of fact was in the lower court, this is entirely too broad a basis upon which to permit this sort of testimony to go to a jury. We do not believe that this question is saved by the case of *Barker* v. *Railroad Co.*, 51 W. Va. 423, 41 S. E. 148, 90 Am. St. Rep. 808, relied upon by the defendant in error. It is true that at page 432 (of 51 W. Va.) of the opinion in that case, a hypothetical question was approved which seems to have permitted a physician to say that the plaintiff's condition *might* have been caused by a shock, a fall or by anything that produces a shock to the spinal column. The opinion does not make it clear just what the issue of fact was that the hypothetical question in

that case related to. Had the issue been that the condition of plaintiff in that case *could not* have been caused by a fall, then the hypothetical question eliciting the reply that it *might* have been so caused would have been clearly relevant. Here, the only question was whether the injuries were due to the fall plaintiff received and to the defective street. There was no denial that the injuries might be due to a fall. The case is further distinguishable from the case at bar because the opinion expressly states that the condition of the plaintiff in that case was connected with the accident by other evidence. In this case, it appears that the most serious condition complained of by the plaintiff was a prolapsus of the uterus. The testimony of Dr. Kessler, as we read this record, was the only possible way by which that condition could have been connected with the accident.

It seems to us that this question contains another element that makes it at least confusing and uncertain. Among the assumptions that the witness is required by the terms of the question to accept is the following : " * * * that on the 13th day of May, last year, she fell suddenly to the ground or on the pavement and *was injured in the condition you found her; * * *."* (Italics supplied.) Dr. Kessler had seen the plaintiff at two different times, the first, the day after the accident, and the second, a few days before the trial. The question does not say to which of these occasions the language "in the condition you found her" relates. If it had explicitly said the condition in which the doctor found her immediately after the accident, there may have been no serious objection to that part of the question, because the more serious condition was not discovered at that time. But if that language refers to the condition in which the doctor found her a few days before the trial, including the more serious injury then known but not discovered on the first occasion, then the assumption of the question anticipates and makes possible but one answer. If the fall injured her and left her in the condition found by the doctor a few days before the trial, then it is obvious that the fall must have caused that condition. Of course, if the question assumes this, the doctor could only answer that the accident caused the injury complained of.

Defendant in error very strongly argues that under the doctrine of *Adams* v. *G. C. Murphy Co.*, 115 W. Va. 122, 174 S. E. 794; *Keenan* v. *Scott et al.*, 78 W. Va. 729, 90 S. E. 331; *State* v. *Angelina,* 73 W. Va. 146, 80 S. E. 141, 51 L. R. A. (N. S.) 877, and kindred cases, the defendant below, not having specifically objected to the hypothetical question on the ground that it omitted to state essential matters of fact, and not having specifically pointed out the omitted matters of fact, cannot now rely upon its objection. The cases referred to undoubtedly establish the doctrine in West Virginia that where a hypothetical question is objected to *on the ground* of its not containing a full statement of the facts relied upon, and the omitted facts are not pointed out in the objection, then the only remedy of the objector is to develop the omitted facts on cross-examination and elicit the opinion of the witness with the omitted facts considered. We are of the opinion, however, that the objection to the question here rests upon a broader basis. Here, the question itself is so framed that it does not relate and restrict the answer of the witness to such injuries as the plaintiff might have received or did receive in the very accident complained of. The quaere is not whether a recital of the facts of that accident contained in the question is complete; the question simply goes afield and asks the witness whether the condition he found could have been due to a (any) fall—not necessarily the fall testified to by the witnesses, nor any fall that the plaintiff actually received, but a fall. No matter how completely the facts of the case might or might not have been recited in the hypothetical question, the interrogatory finally propounded was not relevant to the issue of the case. The court was not interested in ascertaining whether the plaintiff's condition might have been due to *a* fall. The inquiry was as to whether her condition was due to the fall she actually received when she stepped into the defect in the street. Dr. Kessler had just stated that he could not state what caused the condition in which he found the plaintiff a few days before the trial. We are of the opinion that the hypothetical question to which he finally responded fails properly to connect the opinion it elicited to the circumstances under which the plaintiff sustained injuries on the 13th day of May, 1933.

For the reasons stated, the judgment of the Circuit Court of Cabell County is reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*