RUTH M. FRAMPTON

*v.*

CONSOLIDATED BUS LINES, INC.

(No. 10234)

Submitted Sept. 6, 1950.   Decided Oct. 31, 1950.

816

*Bailey, Worrell & Bailey,* for plaintiff in error.

*Kingdon & Kingdon,* and *Arthur Ritz Kingdon,* for defendant in error.

RILEY, JUDGE:

In this action of trespass on the case, instituted by Ruth M. Frampton against Consolidated Bus Lines, Inc., a corporation, in the Circuit Court of Wyoming County, the plaintiff sought to recover damages in the amount of fifteen thousand dollars for personal injuries alleged to have been sustained by her as the result of a collision of the automobile, in which plaintiff was riding, it being driven by her husband, Preston E. Frampton, with the rear end of defendant's passenger bus. At the time of the collision the Frampton car and defendant's bus were going in the same direction upon an open country portion of the Beckley-Mullens highway, at a point just south of the northerly limits of the City of Mullens. The defendant prosecutes this writ of error to the action of the trial court in overruling its motion to set aside a verdict in the amount of seventy-five hundred dollars in favor of plaintiff, grant a new trial, and in entering judgment on the verdict.

The first trial of this case resulted in a jury verdict for plaintiff in the sum of four thousand dollars, which ver-

dict was set aside by the circuit court on the ground that certain Public Service Commission traffic regulations given in evidence were improperly admitted.

The declaration alleges that the defendant, through its bus driver failed "to exercise due care to warn plaintiff and other passengers in, and operators of, automobiles approaching and overtaking said automobile bus or motor coach from its rear of his intention to bring said automobile bus or motor coach to a stationary position or stop, and as incident thereto: (1) to maintain and then and there operate the warning or stoplights which the rear portions of said automobile busses or motor coaches are required by the laws of the State of West Virginia to be equipped; and (2) to turn said automobile bus or motor coach off the travelled and paved portion of said highway and onto the right-hand shoulder of said highway as far as the condition and width of said highway should safely *permits,* as required by the laws of the State of West Virginia." Though the declaration does not allege any failure of defendant bus company's driver to give the arm signal of his intention to stop on the highway, as required by Code, 17-8-9, the plaintiff was permitted, over objection, to introduce evidence bearing on the failure of defendant's bus driver to give the said signal of his intention to stop. And, in support of the court's action, reliance is had on the general allegations as to negligence contained in her declaration, which read that the defendant bus company's driver "so carelessly, negligently, recklessly and unlawfully operated said bus at said time and place that by reason of the negligence aforesaid, said Plymouth automobile in which plaintiff was being conveyed as a passenger and guest was caused to run into and collide with the rear end of said motor bus and to strike the same with great force and violence * * *".

The collision occurred within the limits of the City of Mullens, about midway of a 1100-foot straightaway, which was level except for a slight rise at the northern end of the straightaway. At the place of the collision the berm

on the east side of the highway was from four to six. feet, and at the point where the bus had stopped ran back. to a yard fence from fifteen to twenty-one feet. It is the position of plaintiff and her husband, and he so testified, that the sedan in which they were riding, was being. driven at a speed of thirty-five to forty miles an hour, and. at a distance of approximately sixty feet behind the bus, at the time he became aware that the bus had stopped.

Frampton testified that he immediately increased his. speed, intending to pass the bus, when he was confronted. with an express truck some seventy-five to one hundred. feet away, approaching from the south at an estimated. speed of forty miles an hour; that concluding that there was not sufficient distance to pass, he cut back into the right lane, applied his brakes and skidded into the rear end of the bus. This witness testified in support of plaintiff's theory of the case that the bus stopped suddenly; that the stoplights did not go on at the back of bus; and that the bus driver did not give a hand signal of his intention to stop.

The driver of the express truck testified that at the time he first saw the automobile in which plaintiff was a passenger, he was about seventy-five to eighty feet south of the bus, and was driving about twenty-five miles an hour; that he slowed down to a speed of four or five miles an hour and cut over to the berm on his right side of the highway to make room for the Frampton car; and that he brought his truck to a stop opposite the bus.

The bus driver testified to the effect that at the time he stopped the bus to pick up passengers, there was no automobile in sight, and that whether he used the hand signal did not matter in the circumstances portrayed by this record. He, together with two passengers on the bus, and Mrs. Ferrell, who was flagging the bus when it came to a stop, testified that the bus was stopped on the right berm of the highway, and that the bus driver had opened the door for Mrs. Ferrell and her child to board the bus when the impact of the automobile with the back end of the bus occurred.

Mrs. Frampton testified that she and her husband were driving from Beckley to Mullens in their 1936 Plymouth sedan, enroute from the City of Newfield, New Jersey, to visit relatives in Mingo County, West Virginia; that she saw no stoplights on the bus; that at no time before the bus was brought to a sudden stop did she realize that it would stop; and that the bus driver gave no hand signal of his intention to stop the bus. She testified that she did not give her husband warning that the bus was going to stop, because she "didn't have time to; it stopped so suddenly", and that "I think we noticed it about the same time"; and further that, at that time he attempted to apply the brakes, and started to go around the bus, when evidently he saw an express truck, which she does not remember seeing as it approached their car, and that her husband then drove the car back into the lane of traffiic behind the bus, rather than hit the truck head on; and thereafter that he "* * * slammed them [the brakes] on violently" and the Frampton car then collided with the back end of defendant bus company's bus. The witness further testified that when she saw the bus standing there, she did not think it necessary to call attention to it, "it was too late then." Further Mrs. Frampton testified that if her husband hadn't "slipped into it, he wouldn't have hit it"; and that "He [Frampton] had good brakes and he did have all the way down."

The evidence conflicts as to where the bus driver finally brought the bus to a stop to receive passengers. Mrs. Ferrell testified that prior to and at the time of the accident she was standing on the muddy berm about four feet away from the paved surface of the highway near an embankment ditch, which was behind her. She admits that she did not see the Frampton automobile approaching behind the bus prior to the accident, nor could the plaintiff recall whether she saw Mrs. Ferrell prior thereto. Frampton testified that he did not see Mrs. Ferrell at any time prior to the collision. It may be, as the jury could well infer, that the bulk of the bus blocked the vision of both the Framptons and Mrs. Ferrell, as the bus was brought to

a stop, and the Frampton car was approaching the point of collision. Though the bus driver testified that when he brought the bus to a stop the right wheels were off the right edge of the pavement and well over on the berm, Frampton and Haynes Davidson, a police officer of the City of Mullens, testified that after the collision the front of the Frampton car was interlocked with the rear of defendant's bus and all four wheels of the bus were well within the right lane of the pavement.

On the question whether the Plymouth sedan was equipped with good brakes, the evidence indicates, if we take Frampton's evidence as true, that the brakes were tested by the proper authorities of the State of New Jersey just a short time before the Framptons left for West Virginia, and if the testimony of Don Davis, a passenger on the bus at the time of the accident, and the said Davidson is true, we could say, as a matter of law, that the brakes on the Plymouth sedan were not defective at the time of the collision. However, Charles Edward Pepper, the driver of defendant's bus, testified that when Davidson pressed his foot on the brake pedal it went to the floor, and, basing his testimony on this hypothesis, he testified that the brakes were defective. So on this issue there is a conflict in the testimony.

On the question whether the bus was brought to a gradual stop, or was brought to such sudden stop that the jury could say that it proximately resulted in plaintiff's injury, the evidence is in such conflict as to take from this Court the power to set aside the verdict on that question. We say this because the Framptons categorically stated, driving as they did in their car from Beckley to Mullens, that they were sometimes back of the bus and at least once in front of the bus, and that as the bus reached the city line and entered the City of Mullens, it came to a sudden stop in order to receive as passengers Mrs. Ferrell and her daughter. On the other hand, the witness, Don Davis, a ticket agent for the bus line, as well as a passenger on the bus, riding at the time of the collision just back of the

driver, testified in corroboration of the defendant bus company's driver Pepper that the bus slowed down slightly and that when Mrs. Ferrell "started to get on it [the bus] then the collision came."

Seemingly corroborating Frampton's testimony that the bus came to a sudden stop is the testimony of Anglina Bava, who testified that she was standing at the front of the bus immediately behind the windshield and that she was thrown forward against the windshield of the bus when the collision occurred. The suggestion contained in brief of counsel for plaintiff that if the bus had been struck from the rear this witness would have been thrown backward and not forward seems reasonable; but the witness testified that she was thrown forward against the windshield, which would be the position in which she would have been thrown had the bus been brought to a sudden and abrupt stop.

Likewise the evidence seems to conflict on the question whether the bus driver gave the arm or hand signal, as required by Code, 17-8-9. Pepper says as the bus was stopped it was unnecessary for him to do so. The Framptons, on the other hand, say that the bus came to a sudden stop, and Frampton, who was seated on the side upon which the bus driver was riding, said no arm signal was given.

Likewise the evidence conflicts, though it may preponderate in favor of the defendant, on the question whether the bus was equipped with stoplights in the rear, which were designed to operate when the ignition was on, and the brakes applied. Chief of Police Davidson testified that at the scene of the collision he caused the bus driver to apply the brakes in order to determine whether the lights were operating, but he did not notice whether at the time the brakes were applied the motor was running or the ignition was on. Evidently, Pepper, the bus driver, knew why he was asked to make the test, and that it was necessary that the ignition be on in order for the lights to come on upon the application of the brakes,

so why would he mislead the police officer in making what would certainly be an ineffective test of the stoplights? Be that as it may, the defendant introduced evidence showing that a short time after the collision the lights had been tested as the bus was driven into the bus terminal, and they were found to be in good condition. We are of the opinion that the evidence on this question was for jury consideration, especially in view of the bus driver's testing the stoplights at the request of Davidson.

After the collision there were well-defined marks, evidently made by the skidding wheels of the Frampton car running to the point of impact back for at least twenty feet, and though there is testimony to the effect that the road was not slick, it had been raining and the road was wet, and the skid marks indicate that after Frampton applied his brakes and when they took effect, the car actually skidded into defendant's bus for a distance of at least twenty feet.

This Court need not go into detail as to the facts disclosed by the instant record on the question of the primary negligence of defendant bus company, because it is not the function of this Court, engaged as it is only in the ascertainment whether there has been error in the trial of cases, to set aside the jury verdict on the ground that the evidence is insufficient, where there is a substantial conflict in the evidence.

In the case of *Fielder* v. *Service Cab Co.*, 122 W. Va. 522, 11 S. E. 2d 115, this Court held: "Before directing a verdict in a defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence." Under this well-established rule, involving the trial of cases by a jury, as applied to the instant case, it seems clear to this Court that there is a clear conflict in the evidence on the question of primary negligence of the defendant bus company. If the testimony of the

Framptons is to be taken as true, and there is nothing to impugn the credibility of their testimony, defendant's bus stopped suddenly while the Frampton car was behind it at a comparatively safe distance, and going within the speed limit prescribed by law for travelling upon an open country highway; the brakes of the Frampton car were not defective; and further that there is evidence to show that the defendant bus company's driver failed to observe the regulations of the Public Service Commission, which were introduced in evidence. The jury, therefore, in our opinion, had the right to find that such failure proximately resulted in the collision which caused plaintiff's injuries. On the other hand, if we take as true, as the jury had the right to do, defendant's evidence bearing on the question of primary and contributory negligence, the jury would have the right to find that Frampton's negligence was the sole proximate cause of plaintiff's injuries. As the evidence conflicts materially and in essential details, and, under the rule in the *Fielder* case, the jury would have the right to say that the Frampton car was being driven, as it approached the city limits of the City of Mullens, at a rate of approximaetly thirty-five miles an hour, which was within the prescribed speed limit for open country highways; that the Frampton car, while being so driven as it approached the limits of the City of Mullens, was about sixty feet behind the defendant's bus, which distance the jury could infer was within a safe distance in view of the circumstances portrayed by this record; that defendant's bus, without sufficient warning, was brought to a sudden stop; and that the suddenness of the stop, together with the condition of the road, prevented the driver Frampton stopping his car in order to avert the collision with the defendant's bus. Again applying the rule in the *Fielder* case, the jury having the right to believe that the defendant's bus came to a sudden stop, had likewise the right to believe the testimony of Mrs. Frampton that when the bus was brought to a stop there was not sufficient time to warn her husband of the impending danger. So, resolving the conflicting evidence in this case in favor of the plaintiff, who is the prevailing

party, and treating all reasonable inferences in favor of the prevailing party, we hold that the question of primary and contributory negligence was, in the first instance, a jury question, and the trial court had the right, as it did, to submit the case to a jury.

During the course of the trial objections were made to hypothetical questions addressed to Dr. Charles Biggard, of Mullens. The first question was objected to in a general objection only, but the Court asked, "on what ground?"; and thereupon counsel for the defendant responded, "It's a hypothetical question. It is about twice as broad as the facts would justify." In *Parr* v. *Coca-Cola Bottling Works of Charleston*, 121 W. Va. 314, 3 S. E. 2d 499, in point 5 of the syllabus this Court held: "It does not constitute error to permit a hypothetical question to be answered to which only a general objection is interposed." In the opinion at page 318, the Court citing *Hazelrigs* v. *City of Huntington*, 116 W. Va. 757, 182 S. E. 877, and *Adams* v. *G. C. Murphy Co.*, 115 W. Va. 122, 174 S. E. 794, cases in which it is held that a general objection to a hypothetical question on the ground that it does not include all the pertinent facts, which the evidence tends to prove, will not avail the objector, said: "* * * Without passing upon the form of the hypothetical question involved, we think that this assignment of error is disposed of by the observation that since the objection failed to specify either matters included in the question or matters omitted therefrom which constituted error, but was simply stated generally, it falls short of raising a question of reversible error because it was not sufficiently specific." Clearly, in our opinion, counsel's statement with reference to the general objection to the hypothetical question that "It [the question] is about twice as broad as the facts would justify", does not give the objection the necessary qualities of a specific objection. Therefore, we perceive no error in the court's overruling defendant's objection.

Error is also assigned to the admission in evidence of plaintiff's testimony relating to the nature and extent of

the injuries sustained by her. Plaintiff testified, over objection, that her face was violently thrown against the windshield, and her knee was caused to strike the dashboard of the Frampton automobile. As a result, her nose was broken, her right knee, cheek and eyebrow were lacerated and bruised, and her nose was caused to bleed. Plaintiff also testified that since the accident she has suffered severe pain in her head, knee and nose, and that she has suffered frequently since the accident with headaches and head colds, which she did not have before the accident. This witness further testified that she has had some trouble with her eyes, which she did not have prior to the accident. Plaintiff was simply describing her injuries and her sensations of sight and feeling, which are nothing more or less than what are commonly called "sympathetic symptoms". This evidence is admissible under the ruling in *Sexton* v. *White Transportation Co.*, 97 W. Va. 568, pt. 2 syl., 125 S. E. 574, and *Wilson* v. *City of Elkins*, 86 W. Va. 379, 383, 103 S. E. 118. In point 2 of the syllabus of the *Sexton* case, the Court held that to recover damages in the trial of an action for personal injuries, "for the purpose of showing the extent of his injury, the plaintiff may state that one of his eyes, which had some vision before the injury, was totally blind thereafter." Plaintiff in her testimony as to her personal injuries did not, as she could not, attempt to give the opinion that the injuries were permanent in their nature.

Error is assigned to the ruling of the trial court in admitting plaintiff's evidence bearing on the question whether defendant bus company's driver on bringing the bus to a stop did not give the arm or hand signal, required by Code, 17-8-9. It is contended that because the declaration contains no specific allegation that defendant bus company's driver failed to give the arm or hand signal that there is a fatal variation between the acts of negligence charged to the bus driver in the declaration and the acts of negligence established by the evidence. With this position we do not agree.

The instant declaration alleges, *inter alia,* that defendant bus company's driver was guilty of actionable negligence in that he failed to exercise due care to warn plaintiff and other passengers in, and operators of, automobiles approaching and overtaking said automobile bus or motor coach from its rear of his intention to bring said automobile bus or motor coach to a stationary position or stop, and as incident thereto: (1) to maintain and then and there operate the warning or stoplights, with which the rear portions of such automobile busses or motor coaches are required by the laws of the State of West Virginia to be equipped; and (2) to turn said automobile bus or motor coach off the traveled or paved portion of said highway and into the right shoulder of said highway as far as the condition and width of said highway should safely permit, as required by the laws of the State of West Virginia. In point 5 the syllabus in the case of *Kniceley* v. *West Virginia Midland Railroad Co.,* 64 W. Va. 278, 61 S. E. 811, this Court laid down the rule which prevails in this jurisdiction: "In an action for damages, resulting from injury by negligence, a variance of the evidence from the declaration, in respect to specification of mere matters of detail, concerning the manner, not the time or place at which, or the instrumentalities by which, the injury was inflicted, is immaterial." In that case the declaration alleged that the collision between defendant's train of cars, while being switched against a standing car on which plaintiff's decedent was at work, caused the lumber to be thrown on plaintiff, while the proof is that the collision caused decedent to fall from the car. The Court said at page 288 of the opinion: "There are general averments of negligence. This is a mere erroneous matter of specification, and the variance, if any, is immaterial." See also *Hanley, Admr.* v. *West Virginia, Central & Pittsburgh Railway Co.,* 59 W. Va. 419, pt. 2 syl., 53 S. E. 625; *Deputy* v. *Kimmell,* 73 W. Va. 595, pt. 9 syl., 80 S. E. 919; and *Lee* v. *The Standard Oil Co.,* 105 W. Va. 579, 144 S. E. 292. In point 2 of the syllabus of the *Lee* case, the Court held: "In an action for personal injury there is no variance in respect to specification of mere matters of

detail in evidence, concerning the manner or instrumentality by which the injury was inflicted, if the substantial elements of negligence alleged be proven." The instant case is to be distinguished from the case of *Hawker* v. *Baltimore & Ohio Railroad Co.,* 15 W. Va. 628, which involved an injury to cattle on defendant railroad company's tracks, in which there was a variance between the averments of the declaration and the proof on the matter of the time of injury. Likewise this case should be distinguished from the case of *Jenkins* v. *Spitler,* 120 W. Va. 514, 199 S. E. 368, in which plaintiff sought to establish liability against the owners of an automobile for injuries caused by the alleged negligence of their employee while permissively operating the employers' automobile for his own business and pleasure. The basis of recovery, as alleged in the declaration, shows that plaintiff sought to establish liability against the automobile owners on the theory of master and servant alone. In that case no allegation of the declaration states that the owners of the automobile were bailors and were liable because they owned an automobile with defective brakes. Therein this Court simply held that "The assertion of liability against Campbell Brothers [the owners of the automobile], on the theory of defective brakes, requires that the declaration contain an allegation asserting the existence of defective brakes and Campbell Brothers' knowledge thereof." As heretofore indicated, the instant declaration has, as its basis, the failure of the defendant's bus driver to warn plaintiff by proper signals. The case was tried, as disclosed by the evidence of both the plaintiff and the defendant on that theory, and both litigants offered instructions dealing with the alleged failure of the defendant bus company's driver to give the hand or arm signal required by Code, 17-8-9. So, unlike the *Jenkins* case, this case falls within the rule laid down in the case of *Kniceley* v. *West Virginia Midland Railroad Co., supra,* and other cases hereinabove cited.

It is important to note that the declaration herein is not one which simply alleges two specific acts of negligence,

namely, violation of the regulations of the Public Service Commission and fails to allege another specific act of negligence admitted in evidence, namely, defendant's failure to use the arm or hand signal, as prescribed by Code, 17-8-9. But the declaration, as appears from the above-quoted part thereof, contains the basic allegation of actionable negligence, namely, the failure of defendant bus company's driver to warn plaintiff of his intention to stop the bus "and as incident thereto", the failure to comply with regulations of the Public Service Commission in regard to (1) stoplights and (2) the duty to bring the bus to a stop as far off the paved portion of the highway as the condition and width of the highway safely permit.

We therefore are of the opinion that the evidence as to defendant bus company's driver's failure to use the arm or hand signal, as he brought the bus to a stop, was properly admissible, though there is no specific allegation thereof in the declaration.

We perceive no error in the trial court's submission in evidence of certain sections of the motor carrier safety regulations promulgated by the Public Service Commission of West Virginia by order entered on December 31, 1940. These sections were in force and effect at the time plaintiff was injured. The regulations were properly authenticated in compliance with Code, 57-1-7. In *Atlantic Greyhound Corp.* v. *Public Service Commission, et al.,* 132 W. Va. 650, 54 S. E. 2d 169, this Court held that under Chapter 86, Article 5, Section 5(a), Acts of the Legislature, 1939, the Public Service Commission of West Virginia was empowered to prescribe rules of practice and procedure, and the regulations under consideration were adopted in conformity with the statute. As they are plainly traffic safety regulations, which reasonably serve the purpose for which they were promulgated, no further standard is required to make the delegation of power constitutionally valid within the ruling of *Chapman* v. *Huntington Housing Authority,* 121 W. Va. 319, 3 S. E. 2d

502; *Rinehart* v. *Woodford Flying Service,* 122 W. Va. 392, 9 S. E. 2d 521; and *State* v. *Bunner,* 126 W. Va. 280, 27 S. E. 2d 823. To the effect that a legislative delegation of authority to an executive agency of the State, charged with general regulation of motor carriers for hire, to make traffic safety regulations is constitutional and valid is well supported by the following cases cited in plaintiff's brief: *State* v. *Dixon,* 335 Mo. 478, 73 S. W. 2d 385; *Matz* v. *J. L. Curtis etc., Co.,* 132 Ohio St. 271, 7 N. E. 2d 220; *In Re James,* 99 Vt. 265, 132 Atl. 40; *Modeste* v. *Public Utilities Commission,* 97 Conn. 453, 117 Atl. 494.

Error is also assigned to the ruling of the trial court in refusing to set aside the verdict of the jury in the amount of seventy-five hundred dollars on the ground that it is plainly excessive.

The evidence discloses that by reason of the impact of plaintiff's face and eye glasses with the windshield, her cheek was cut, and the septum or cartilagenous portion of her nose and the bony portion thereof were separated at the junction thereof, and that by reason of the blow there was a massive internal flow of blood from her nose to her throat, which, while the flow of blood continued, made it difficult for plaintiff to breathe, so that she was compelled to sit up all the first night following her injury to prevent the blood from her nose strangling her. As a result of the cut on her cheek plaintiff at the time of the trial had a scar therefrom, and a "slightly lumpy deformity on the bridge of her nose", her nose being turned a little to the "right" at the place where it had been injured. Plaintiff testified that as a result of the injury to her nose she had developed a tendency to suffer head colds, that she had pain in her nose during damp weather; that she had had considerable trouble with her eyes; and that as a result of the injury to her knee, she suffers pain and discomfort when she kneels.

Dr. J. F. Biggart, who attended plaintiff after the accident, testified that, in addition to plaintiff's head injuries, she suffered a fracture of the lower or distal end of the

patelle, the kneecap; that only the tip of the cap "was broken off across there"; that "there was a little separation, perhaps the thickness of a real heavy sheet of paper distance between * * *"; and that there was between the broken tip and main part of the kneecap about a centimeter of separation. This witness further testified that the subjective symptoms which plaintiff had as head colds, pain in her head and nasal passages, and trouble with her eyes were due to the effects of sinusitis, which Dr. Biggart said, in his opinion, resulted from plaintiff's nose injury by reason of the obstruction of ventilation in the nasal passages, which interferes with drainage of the sinus on that side of plaintiff's nose. He further testified that this condition as to headaches, head colds and throbbing pain is chronic and that "The permanency of it depends on whether it is corrected or not. Without the correction, I'd say it is permanent." As to the scar and irregular appearance of plaintiff's nose, Dr. Biggart testified that the condition is permanent, "but I think it's going to improve; I mean the appearance. * * * The appearance of the scar will become less noticeable." This witness further testified that the pain and soreness of the nose, concerning which plaintiff testified, was probably caused by the injury; but when asked in a hypothetical question whether the pain and discomfort in her knee will continue permanently, he answered: "How long is permanent?" In answer to an inquiry to the effect that if witness cannot say the condition will continue permanently, then would witness give an estimate of how long it would take for it to disappear, he answered, "I think it will continue for some time until the bone unites. It isn't completely united yet."

On cross examination Dr. Biggart testified affirmatively to the question whether his answers to the hypothetical question were based upon what the patient had told him, and that the fact that plaintiff's nose was broken or flattened would not necessarily have anything to do with whether she had sinus trouble, he said, "It wouldn't necessarily do it. It could or it could not."

From Dr. Biggart's testimony we glean that the condition of plaintiff's nose, especially as to its causing head colds, a sinus condition and attendant pain and discomfort may be corrected by operation; that the painful condition of plaintiff's knee, as testified to by her, will disappear when the fracture unites, which had not occurred at the time of the trial; and that the scars, which plaintiff says greatly disfigure her, will become less noticeable. So from Dr. Biggart's testimony it may well be said that, with the exception of the scars, which he believes will become less noticeable as time goes on, plaintiff has received no permanent or noncorrectible injuries.

Dr. E. M. Wilkinson, a practicing physician at Pineville, testified that the scars across plaintiff's right cheekbone and across the bridge of her nose are "faint"; that her nose is slightly deviated to the "left"; that at the time he examined her he did not find any evidence of injury inside her nose; and that the fracture at the lower tip of the kneecap was healed at the time witness examined plaintiff.

From a careful examination of the evidence in this case, bearing on plaintiff's injury and the total permanency thereof, we are persuaded to the view that the verdict of the jury in the amount of seventy-five hundred dollars is excessive, and merits the setting aside of the verdict within the rule of the syllabus in *Thomas* v. *Lupis,* 87 W. Va. 772, 106 S. E. 78. See also *Webb* v. *Brown-Williamson Tobacco Co.,* 121 W. Va. 115, op. 122, 2 S. E. 2d 898. While it is interesting to note that in the first trial of this case the jury returned a verdict for the plaintiff in the amount of four thousand dollars, not having the evidence in that case before us, we have not taken the verdict in that case into consideration in the appraisement of this case on the question of the excessiveness of the verdict.

The trial court gave three instructions for the plaintiff, namely, Nos. 1, 2 and 3; three for the defendant as offered, that is, Nos. 2, 12, and 15; and another of defendant's instructions (No. 16), as amended, said instruction No. 16

as offered having been amended in an unimportant detail. The court refused nineteen instructions offered by the defendant, including a peremptory instruction. As a reversal of the judgment herein and the awarding of a new trial may result in a retrial of this case, at the risk of making this opinion seem prolix, we deem it advisable to discuss in this opinion all the instructions given and refused.

Error is assigned to the giving of plaintiff's instruction No. 1. That instruction told the jury that it *may* find for the plaintiff, if the collision between the Frampton automobile and defendant's bus was proximately caused by the failure of the defendant and its servant bus driver to maintain in good working order on the rear of the bus a red or amber stoplight, which would light up when the foot brakes were applied, and when lighted was capable of being seen and distinguished at a distance of one hundred feet in the rear of the bus in normal daylight; or by reason of the failure of defendant bus driver, when intending to stop his motor bus on a public highway, and when having reasonable cause to believe that there were other motor vehicles approaching or overtaking him from the rear to give the hand signal when he commenced to slow down and before he stopped by extending his arm to the outside of the bus and moving it up and down in a vertical direction; of if the collision was proximately caused by failure of the bus driver to drive his bus from the traveled or paved portion of the highway, if it was practicable to do so. The instruction also told the jury that it should not so find for the plaintiff, if the jury should believe from the evidence "that the plaintiff was herself guilty of some negligent act or omissions of duty on her own part which proximately contributed to her injuries in said collision." We perceive no error in the giving of this instruction. In the first place, as heretofore indicated, the regulations of the Interstate Commerce Commission embraced in the Motor Carrier Safety Regulations Revised, as adopted by the Public Service Commission of West Virginia by Motor Carrier General Order

No. 3-C on December 31, 1940, as heretofore indicated, were properly admitted in evidence.

The instruction properly informed the jury as to the bus driver's duty to warn plaintiff and driver of the Frampton car of his intention to stop by giving the arm signal, required by Code, 17-8-9. The evidence in regard thereto, as heretofore indicated, was properly admitted under the general allegations of negligence contained in the declaration. But defendant says that this instruction is erroneous because it is binding and does not meet the requirement of *Bragg* v. *Whitten Transfer Company*, 125 W. Va. 722, 26 S. E. 2d 217, that, in a binding instruction on primary negligence, contributory negligence must be negatived. In the first place this instruction is not binding, and, in the second place, the latter clause of the instruction clearly and completely negatives contributory negligence within the requirement of the *Bragg* case.

Plaintiff's instruction No. 2, given by the court, told the jury that, though plaintiff's husband may have been guilty of contributory negligence so as to prevent *him* from recovering damages for any injuries he may have sustained, this does not affect plaintiff's right to recover in this case, as the negligence of her husband, if any, cannot, as a matter of law, be imputed to her. This instruction, in our opinion, correctly negatives the applicability of the doctrine of imputed negligence. Plaintiff, though the wife of the driver of the Frampton car, was simply a guest passenger. In *Parsons* v. *New York Central Railroad Co.*, pt. 7 syl., 127 W. Va. 619, 34 S. E. 2d 334, and *Jameson* v. *Norfolk & Western Railway Co.*, 97 W. Va. 119, 124 S. E. 491, this Court held that, in the absence of a joint enterprise, the negligence of the driver of a motor vehicle cannot be imputed to a guest passenger, and because plaintiff had no voice in directing and governing the movements of the Frampton automobile while it was being driven by her husband, the relation of joint enterprise does not exist between them. See *Horchler* v. *Van Zandt*, 120 W. Va. 452, 199 S. E. 65, in which this Court held that

the relationship of joint enterprise between the driver of an automobile and a guest passenger is not established by the mere fact of their riding together to the same destination for a common purpose, where the guest has no voice in directing or governing the movements of the automobile. The doctrine of imputed negligence, of course, is entirely distinct from the doctrine of contributory negligence and this instruction does not purport to instruct the jury, as other instructions given do, as to plaintiff's duty to warn the driver of the automobile of impending danger and the concomitant contributory negligence on her part, if, in the circumstances portrayed by the record, she had ample opportunity to give such warning in time to prevent the collision. Whatever duty and liability in this regard may be charged to plaintiff will be discussed later in this opinion in the Court's ruling on instructions involving contributory negligence, as a possible bar to recovery in this action.

Plaintiff's instruction No. 3 was properly given. It simply instructs the jury as to certain elements of alleged damage amply disclosed by the evidence. The part of the instruction specifically objected to is that the court instructed the jury that if it believed from the evidence that plaintiff was entitled to recover, then it may consider "the effect on the appearance, health and nervous system of the plaintiff according to its degree and probable duration *as likely to be temporary or permanent,* or such of them as you believe from the evidence exists or existed, * * *." (Italics supplied). Though the evidence is slight as to permanent injury, it is sufficient in that regard to merit the giving of this instruction.

Defendant's instruction No. 2, given without objection, properly informed the jury that it should find for the defendant, if plaintiff's injury was solely due to the negligence of her husband. This instruction is important of consideration, because it is not covered by other instructions bearing on the hypothesis that sole negligence of the plaintiff's husband may have caused plaintiff's injury.

Defendant's instruction No. 12 was properly given. It simply told the jury that in arriving at its verdict, in addition to the evidence introduced by plaintiff and defendant, the jury had a right "to take into consideration the view of the point, or points, where said collision happened, and in weighing the testimony of the witnesses, you [the jurors] have the right to consider the physical facts ascertained from your view." This instruction conforms substantially to the holding of this Court in the case of *Thorn, Admr.* v. *Addison Bros. & Smith,* 119 W. Va. 479, 484, 194 S. E. 771, in which this Court, citing many West Virginia cases involving the effect of a view by a jury, said at page 484 of the opinion: "That the jury was entitled to take into consideration, along with the testimony introduced in the case, what it had observed on the view, is well sustained by our authorities."

This Court in its most recent decision involving the effect of a view by the jury in the case of *Tennessee Gas Transmission Co.* v. *Fox,* 134 W. Va. 106, 58 S. E. 2d 584, citing and drawing from the opinion in the case of *Doman* v. *The Baltimore and Ohio Railroad Co.,* 125 W. Va. 8, 22 S. E. 2d 703, said: "* * * and, though the view is not in all respects evidence, it enabled the jury to understand the opinion evidence adduced in court." By the limitation on the evidentiary effect of the jury view suggested in the *Tennessee Gas Transmission Company* and *Doman* cases, this Court did not depart from the position which prevails in this jurisdiction that a jury view may be considered by a jury, together with the evidence introduced by plaintiff and defendant. Clearly, in the sense that matters brought to the attention of the jury on a view of the premises, the view is evidence. But a jury view will not serve to take from the party upon whom the burden of proof lies the duty of introducing sufficient other evidence on which the jury could properly hold that the party upon whom the burden of proof lies has sustained that burden by evidence other than the jury view. As well stated in 11 M. J., Jury, Section 65: "A view is for the purpose of informing the jurors upon any pertinent inquiry being made in the trial

of the case, and the things which they observe upon such view, so far as they are pertinent to show anything proper to be proved, are to be considered by them the same as any other evidence introduced in the case." An excellent treatise of West Virginia cases involving a view of the premises by a jury during the course of a trial was read by Dr. T. Porter Hardman, Dean of the College of Law of West Virginia University, at the recent meeting of the Judicial Association on October 6, 1950, at Charleston, which will be published at a later date in the minutes of that meeting.

Defendant's instruction No. 15, given, amply informed the jury in regard to the requirement that plaintiff must exercise reasonable care for her own safety; and it was proper for the court to give it.

Defendant's instruction No. 16, as amended, told the jury that: "* * * it is the duty of the driver of a motor bus when intending to stop said motor bus on a public highway, when he has reasonable cause to believe that there are other motor vehicles approaching him from the rear, not only to give a hand signal when he commences to slow down and before he stops, by extending his arm to the outside of the bus and moving it up and down in a vertical direction," but also it told the jury that "it is the duty of the bus driver to drive his bus off the traveled or paved portion of the highway and on to his right hand shoulder of the highway if that is practicable in the particular circumstances, and if the jury shall believe from the evidence that at the time the bus slowed down to stop the driver of the bus had no reasonable cause to believe that there were other motor vehicles approaching him from the rear, it was not the duty of the driver to give a hand signal." The giving of this instruction correctly informed the jury as to the matters involved therein. The amendment of defendant's original instruction No. 16, which told the jury that "if the jury shall believe from the evidence that at the time the bus slowed down there was no car visible for a distance of over five hundred feet, it was not the duty of the driver to give a hand

signal" was proper and the deletion of the words "there was no car visible for a distance of over five hundred feet" did not prejudice the defendant. In our opinion, the instruction, as amended in the latter part, clearly stated the driver's duty to give a hand signal, and the statement in the amended instruction is less argumentative than that contained in the latter part of the original instruction.

Defendant's instruction No. 3, refused, reads: "The court instructs the jury that negligence cannot be inferred from the mere happening of the accident, but the burden is upon the plaintiff to prove by a clear preponderance of the evidence that the defendant was negligent in the manner alleged in the declaration, and that the negligence charged in the declaration was the direct and proximate cause of the plaintiff's injury, and if the preponderance of the evidence does not establish these facts, they should find for the defendant." Counsel for plaintiff, citing *Payne* v. *Virginian Railway Co.*, 131 W. Va. 767, 775, 51 S. E. 2d 514, and *Mott* v. *Davis*, 90 W. Va. 613, objected to the giving of the instruction because it referred the jury to the declaration for the purpose of determining what the acts of negligence charged against the defendant are. In the *Mott* case, cited in the *Payne* case, pt. 8 syl., this Court held that "the court should not by instructions *on the subject of such negligence* refer the jury to the declaration to determine *what the acts of negligence charged against the defendant are.*" (Italics supplied). In our opinion, however, the instant instruction does not attempt and does not refer the jury to the declaration to determine "what the acts of negligence charged against the defendant are": it simply instructs the jury on the doctrine of preponderance of the evidence and on the question of proximate cause. This instruction, not coming within the *Payne* and *Mott* cases, and not being covered by any other instruction, should have been given, and the trial court's failure to do so is reversible error.

Defendant's instruction No. 4 was properly refused because it told the jury that plaintiff is not entitled to recover unless defendant was guilty "of the identical negli-

gence charged in this case", and thus the instruction comes fully within the rulings of this Court in the instant regard in the *Payne* and *Mott* cases.

Likewise defendant's instruction No. 5 was properly refused, because it confines plaintiff's recovery to the proof that defendant's negligence was the *sole* proximate cause of the injury. This instruction ignores the fact that the doctrine of imputed negligence has no application to this case, and ignores the very important postulate that in a case such as this the plaintiff, in the absence of contributory negligence on her part, may recover, if her injuries resulted from the concurrent negligence of the bus driver and the driver of the Frampton car.

We perceive no error in the court's ruling in refusing to give defendant's instruction No. 6. This instruction, in our opinion, is misleading in that it seems to assume, as a matter of law, that a situation of danger existed, because it does not take into consideration that there is substantial evidence in this record tending to show that defendant's bus was brought to such sudden stop as to create a situation of impending danger, which could not be avoided. Moreover, the instruction is abstract, and therefore its refusal for that reason was not prejudicial error. In this jurisdiction abstract instructions are never favored. 10 M. J., Instructions, Section 23.

Defendant's instruction No. 7 was properly refused. That instruction told the jury that if it should believe from the evidence that plaintiff's husband was preparing to pass the bus, then it was and became his duty to blow his horn to warn the bus driver of his approach. This instruction omits the element of proximate cause, and it is inapplicable to this case for the reason that there is nothing in this record which would indicate that if Frampton had blown his horn the collision would have been averted.

No error was committed by the trial court in refusing defendant's instruction No. 8, as this instruction is amply covered by the giving of defendant's instruction No. 15.

The refusal to give defendant's instruction No. 9 was not error, as to a large extent the instruction is abstract, and omits the element of proximate cause.

The refusal of defendant's instruction No. 10, in our opinion, likewise was not reversible error. The instruction is abstract, does not include the element of proximate cause and tends to mislead the jury. As heretofore indicated, defendant's instruction No. 3, refused by the court, would have sufficiently instructed the jury on the preponderance of the evidence and the question of proximate cause.

In our opinion, defendant's instruction No. 11, should have been given, but its refusal would not have been reversible error, if the court had given defendant's instruction No. 3.

Defendant's instruction No. 13 was properly refused. Though plaintiff's evidence conflicts with the testimony of the defendant bus company's driver, Charles Edward Pepper, on the question whether the brakes of the Frampton car were defective, the instruction is misleading in that it directs the jury to find for the defendant, if the jury should believe that "the defectiveness of the brakes was the proximate cause of the collision", then the jury should find for the defendant. Thus the instruction fails to take into account that the jury may find for the plaintiff if, in the absence of contributory negligence on her part, the collision was caused by the defectiveness of the brakes of the Frampton automobile, as well as the alleged negligence of the defendant bus company's driver, both of which may have proximately contributed to plaintiff's injuries. The words "proximate cause" in the instant instruction, in order not to be misleading, should be qualified by the word "sole" or some other clarifying word.

It was reversible error for the trial court to have refused to give defendant's instruction No. 14, which instruction sets forth defendant's theory of the case on the question of contributory negligence. As hereinabove

stated, defendant's instruction No. 16 is amply covered by defendant's instruction No. 16, as amended.

Defendant's instruction No. 17 is covered by defendant's instruction No. 15.

Defendant's instruction No. 18 was properly refused, because the latter part of that instruction is a *non sequitur* to the preceding part.

Defendant's instruction No. 19 was properly refused, because, as heretofore indicated, the evidence as to the failure of the defendant bus driver to give a hand signal was properly admitted into evidence.

Likewise defendant's instruction No. 20 should have been refused for the same reason as noted for instruction No. 19.

Defendant's instruction No. 21 makes a prerequisite to liability the violation of a "road law" by the driver of defendant's bus, as the sole proximate cause of plaintiff's injury. Therefore, the vice of the instruction is that it fails to take into account that plaintiff may, nevertheless, recover in the absence of contributory negligence on her part, though both the bus driver and Frampton were guilty of negligence proximately contributing to her injury.

Defendant's instruction No. 22 likewise was properly refused, because the instruction requires plaintiff to prove to the satisfaction of the jury that her injuries resulted solely from the negligence of the bus driver.

For the foregoing reasons we reverse the judgment of the Circuit Court of Wyoming County, set aside the verdict of the jury, and award defendant a new trial.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*