**MONONGAHELA RAILWAY COM-
PANY, a corporation, Appellant,**

v.

**Robert H. BLACK, Appellee.**

**No. 7217.**

United States Court of Appeals
Fourth Circuit.

Argued June 21, 1956.

Decided July 17, 1956.

Russell B. Goodwin and Charles P. Mead, Wheeling, W. Va., for appellant.

Albert D. Brandon, Pittsburgh, Pa. (John B. Garden, Wheeling, W. Va., and Thomas Park Shearer, Pittsburgh, Pa., on brief), for appellee.

Before PARKER, Chief Judge, PRETTYMAN, Circuit Judge, and TIMMERMAN, District Judge.

TIMMERMAN, District Judge.

On this appeal, "It is contended by the Monongahela Railway Company that the Safety Appliance Acts should not have been applied to the case and that the verdict of the Jury was so excessive as to shock the conscience and create the impression that the jury misinterpreted the facts or the law." (pp. 3 and 4 of Appellant's brief.)

The plaintiff recovered a verdict below in the amount of $21,400, on account of personal injuries received when he was struck by a moving freight car on a side track at the Arkwright Coal Mine. The siding at the mine consists of four side tracks which pass under a loading tipple owned by the Pittsburg Consolidation Coal Company. The tracks run on a downgrade of one degree, the South end having an elevation lower than the North end, so that when empty cars are placed on the side tracks by appellant from the main line at the North, the cars are powered Southward by the force of gravity. When empties are placed on the side tracks, their brakes are applied until they are ready to be loaded. When a car is ready for loading, its brakes are released, and the car is allowed to coast downgrade to the tipple which is located a slight distance South of the midpoint of the side tracks. When the car reaches the tipple, its brakes are again applied, and during loading, the car is further secured by a chain and retarder. After loading, the car is released from the tipple and is

allowed to coast down to the South end where the brakes are again applied and where it remains until the railroad picks it up and carries it to its destination.

The side tracks are numbered one through four. The side track closest to the main line, or the one most eastward, is the number one track. The one most westward is number four.

At the time of plaintiff's injury, plaintiff was standing on the number two track at the South end facing West. He was checking numbers on loaded cars on the number three track preparatory to returning them to the main line. Plaintiff was a conductor employed by appellant and was in charge of a train crew consisting of a brakeman, a flagman, a fireman, and an engineer. There were other loaded cars, with which plaintiff was not then concerned, standing on the number two track North of plaintiff and South of the tipple. One of the Coal Company's "car droppers," the witness Forys, was riding two loaded cars down from the tipple on track number two, intending to apply the brakes on the lead car and bring the cars to a halt before reaching the other loaded cars. When Forys attempted to apply the brakes, the brakes failed to take hold, and the two cars crashed into the standing cars causing them to suddenly lurch downgrade against plaintiff.

While this appeal presents two issues for consideration, the primary one is that which challenges the correctness of the trial judge's ruling that the cars on the side track, placed there by appellant and to be removed by appellant when loaded, were on appellant's line within the meaning of the Safety Appliance Act, 45 U.S.C.A. §§ 1 through 46. It is urged that since the offending car was on a side track, it was not in use on appellant's line.

45 U.S.C.A. § 11 provides:

"It shall be unlawful for any common carrier subject to the provisions of sections 11–16 of this title *to haul, or permit to be hauled or used on its line,* any car subject to the provisions of said sections not equipped with appliances provided for in said sections, to wit: *All cars must be equipped with \* \* \* efficient hand brakes \* \* \*.*" (Emphasis added.)

To support its argument that the offending car was not in use on its line, appellant relies upon the Third Circuit's decision in Patton v. Baltimore & Ohio R. Co., 3 Cir., 197 F.2d 732, wherein the B & O was absolved of liability under the Act for the reason that its cars had been delivered to the Duquesne Slag Products Company and were, at the time of Patton's fatal injury, being operated over Duquesne's own independent railway system. Appellant seeks to bring the present case within the rationale of Patton upon the theory that the offending car was being operated by and was under the control of the Coal Company at the time of plaintiff's injury. With this, we cannot agree. We think Patton is inapplicable to the facts of the instant case. The facts in the Patton case were exceptional. In the language of the Court, 197 F.2d at page 740:

"None of the foregoing decisions, however, involved facts such as those before us. In each there was but one railroad system involved. Here we are concerned with a situation where one railroad, B & O, has delivered its cars and another private railroad system, Duquesne's, has moved the cars, set the brakes and assumed control throughout the process of unloading. Duquesne, as we have said, had its own tracks, engine and crew. Moreover, Duquesne did, like other railroads, inspect and repair cars. In fact Patton was employed in repairing cars when he was killed. \* \* \*"

Even in the broadest sense, it cannot be said in this case that the Coal Company operated an independent railway system. The Coal Company owned no engines or other rolling stock and it operated none. It did not and was not equipped to inspect and repair freight cars; nor did appellant expect it to do so. The Coal Company was a customer

of appellant whose sole connection with the cars was the loading of them. The placing of the cars for loading and the loading of them were all a part of the interstate movement of coal over appellant's railway system. At some inconvenience, the cars might have been loaded on appellant's main line, in which case there could be no doubt as to the application of the Act. We are not prepared to hold that a railroad is relieved of its responsibility to provide safe appliances when it places one of its cars on a side track for the sole purpose of having it loaded with freight to be hauled by it. In this case, the side tracks would have been utterly valueless without the railroad. As used, they operated to promote commerce over appellant's line of railroad.

Investigation has failed to bring to light any decisions exactly in point. However, we hold that if the car in question was being used at the time of plaintiff's injury as a part of appellant's business in interstate commerce, as it undoubtedly was, the Safety Appliance Act was applicable. The District Judge was correct in so holding.

■ There was no abuse of discretion on the part of the District Judge in refusing to grant a new trial on the ground that the jury's verdict was excessive. Plaintiff was struck on his right side, receiving the greatest impact in his chest. As a result, Plaintiff spent twelve days in Vincent Pollotti Hospital where his chest was bound and he was given opiates and injections to relieve his discomfort. After leaving the hospital, he continued to have pain in his chest and left knee. Later, it was discovered that he had a torn cartilage in his left knee, and he returned to the hospital for another twelve days to have the cartilage removed. After his discharge from the hospital, he had to use crutches for six weeks and keep his knee bound. He underwent deep heat therapy twice a week for fourteen months following the injury and during that time wore a harness around his chest to aid his breathing and to relieve his pain. He was out of work for five months, losing $2,400 in wages.

In denying the motion for a new trial, the District Judge said:

"As to the claim of the Monongahela Railway Company that the jury verdict is excessive, the Court observes that it is difficult to place a value upon shock, physical pain and suffering, mental anguish and like elements of damage. Courts are generally reluctant to disturb jury verdicts where the damages are incapable of accurate measurement. Of course, if the judicial conscience is shocked by the amount of the verdict, or if the verdict is so grossly excessive as to indicate prejudice, passion, partiality or corruption on the part of the jury, or appears to have been based on mistake, misconception of misinterpretation, interference by the Court would be justified.

"While the amount of damages found by the jury in this case may be greater than would have been found by the Court if the case had been heard without a jury, the Court is unwilling, under the circumstances, to disturb the verdict and must decline to grant the motions as filed by the Railway Company."

The District Judge's view of the law was quite correct. Brewer v. Appalachian Constructors, 138 W.Va. 437, 76 S.E. 2d 916; Davis v. Pugh, 133 W.Va. 569, 57 S.E.2d 9. In Webb v. Brown & Williamson Tobacco Co., 121 W.Va. 115, 2 S.E.2d 898, 901, we find:

"* * * The court is unanimous in the view that the verdict is probably excessive; but a majority is of the opinion that, in view of the well known rule that the verdict of a jury will not be disturbed except where it plainly appears to have resulted from mistake, partiality, passion, prejudice or lack of due consideration, the excess finding is not such as would warrant a reversal of the judgment and a setting aside

of the verdict on that ground. Thomas v. Lupis, 87 W.Va. 772, 106 S.E. 78."

See also Bailey v. De Boyd, 135 W.Va. 730, 65 S.E.2d 82; and Yuncke v. Welker, 128 W.Va. 299, 36 S.E.2d 410.

There was no error in the trial judge's refusal to set aside the jury's verdict. There were twelve jurors who, after deliberation, decided that $21,400 was the correct amount to compensate for plaintiff's injuries. We do not think the trial judge was bound, under the evidence, to reach a different conclusion and grant a new trial.

Affirmed.