**Jamie S. BENNETT, Administratrix of the Estate of Donald Bennett, Deceased, Plaintiff,**

**v.**

**WEIRTON STEEL COMPANY, National Steel Corp., Consolidated Rail Corp., International Mill Services, Inc., Defendants.**

**Civ. A. No. 83–0103–W(K).**

United States District Court, N.D. West Virginia, Wheeling Division.

May 18, 1987.

---

Sterl F. Shinaberry, Charleston, W.Va., Barry Hill, Zagula & Hill, Weirton, W.Va., and G. David Brumfield, Welch, W.Va., for plaintiff.

Carl N. Frankovitch, Frankovitch & Anetakis, Weirton, W.Va., for defendants Weirton Steel and Nat. Steel.

Robert H.C. Kay, Kay, Casto & Chaney, Charleston, W.Va., for defendant Consol. Rail.

Landers P. Bonenberger, McDermott & Bonenberger, Wheeling, W.Va., for defendant Intern. Mill Service.

## MEMORANDUM OPINION

KIDD, District Judge.

Pending before the Court is defendant Consolidated Rail Corporation's ("Conrail's") motion for summary judgment and defendants Weirton Steel Company's and National Steel Corporation's ("Weirton Steel's") motion for partial summary judgment. The motions have been exhaustively briefed and are ripe for disposition.

This case involves a wrongful death action by the administratrix of Donald Bennett, who was engaged as a field brakeman by Weirton Steel. While engaged in the lawful scope and performance of his employment, in the process of dropping 41 railroad cars by the gravity method to a level where Conrail would pick up said cars,.Bennett was run over and killed by the railroad cars. Bennett's administratrix then brought this action based on diversity against Weirton Steel, Conrail, and International Mill Service, Inc., claiming (1) negligence action against all three defendants (paragraph 8 of plaintiff's complaint); (2) a Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 action against Weirton Steel (paragraph 10 of plaintiff's complaint); (3) a "Mandolitis" action against Weirton Steel (paragraph 9 of plaintiff's complaint); and (4) National

Safety Appliance Act, 45 U.S.C. § 1 *et seq.* action against Conrail (paragraph 11 of plaintiff's complaint).

Conrail, a railroad engaged in interstate commerce, regularly transported railroad cars loaded with iron ore to Weirton Steel. Conrail delivered the loaded iron ore railroad cars to the inbound tracks on Weirton Steel's property. Weirton Steel's engine and crew then moved the loaded iron ore railroad cars over tracks owned and maintained by Weirton Steel to the unloading facilities of Weirton Steel. The loaded iron ore railroad cars were then unloaded.

After the iron ore cars are unloaded, the empty cars had to be moved to the outbound tracks in order to be picked up by Conrail's engine and crew. To do so, the empty cars were attached together and "dropped" from Weirton Steel's unloading facilities by gravity to the outbound tracks.

Bennett was dropping 41 empty ore cars on Weirton Steel's Track 28 when he was killed. The procedure followed by Bennett is as follows:

At a point when there are from 60 to 80 empty cars on the empty side of the dumper, the brakeman checks hand brakes on those cars and gets on the east end of the string of cars. Once on the cars, the brakeman then releases the final hand brake and rides the cars to the clearance point of either 26 or 28 track. When this point is reached, the cars are slowed and stopped by applying the hand brakes on the cars. The brakeman then proceeds back to the rest of the crew on foot.

Weirton Steel's answers to plaintiff's interrogatories.

At time of the fatal injury, Track 28 was surrounded by loose rock, discarded machine parts, and other discarded or junked items; the surface of the land surrounding Track 28 was irregular, and Track 28 had no lighting.

When Bennett could not be located, Weirton Steel employees inquired of Conrail's conductor whether he had seen Bennett. When the conductor said no, a search was commenced. As a result the following report was made:

Apparently the employee Don Bennett # 21095 slipped off the ore cars. There is physical evidence on the fourth ore car, PC5006, from the east end of the (41) empty ore cars, showing flesh and blood on the journal box on the I.M.S. side of # 28 track.

"Incident Report" by PTL J. Berthu 128. Also, a "Supplemental Report" of PTL Holt 10016 also stated that the first blood was found on the journal box of Car # PC 5006. The accident report filed by Weirton Steel stated that Bennett was on the "B" end of Car # CR500426 which was the third ore car from the east end, just in front of the ore car where the first sign of flesh and blood was found.

A day after the accident, Weirton Steel inspected the 41 ore cars. The only defect found was on Car # CR502257, being a defective top ladder tread at the A end of the car, which was the 34th car from the east end. The cars were also inspected three days later with the same result as reported after the accident.

These cars were inspected prior to delivery to Weirton Steel with no defects found. Conrail contends that the defect in the top ladder tread was caused during the car unloading process when the car is bodily picked up and turned upside down for the ore to come out of the top.

Defendant Conrail claims that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. The Court will just address the Safety Appliance Act claim and then the negligence claim.

## SAFETY APPLIANCE ACT CLAIM AGAINST CONRAIL

The Safety Appliance Act does not create a federal cause of action for injuries resulting from a railroad's violation of the Act. A cause of action under FELA, however, embraces claims based on violations of the Safety Appliance Act. In such a claim, there is absolute liability if the injury resulted "in whole or in part" from the railroad's violation of the Act. *Crane v. Cedar Rapids & I.C.R. Co.*, 395 U.S. 164, 166,

89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1968). Therefore, the plaintiff is required to state a cause of action under FELA for the Appliance Safety Act.

▆▆ The material elements of such a claim are (1) that the plaintiff is an employee of Conrail; (2) that at the time of the accident the defective ore car was in use on Conrail's line; and (3) that the injury resulted "in whole or in part" from the defective car. The Court, viewing the evidence in a light most favorable to the plaintiff, is of the opinion that none of these elements is satisfied.

First, Bennett was not an employee of Conrail. In *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974), the United States Supreme Court set out:

> Under common-law principles, there are basically three methods by which a plaintiff can establish his "employment" with a rail carrier for ... [FELA] purposes even while he is nominally employed by another. First, the employee could be serving as the borrowed servant of the railroad at the time of his injury. Second, he could be deemed to be acting for two masters simultaneously. Finally, he could be subservant of a company which was in turn a servant of the railroad.

*Supra* at 324, 95 S.Ct. at 476. (citations omitted).

There is simply no evidence to support any one of the three methods establishing "employment." Conrail had no control over Bennett nor any control over Weirton Steel. Conrail simply delivered full ore cars and picked up empty ore cars. Weirton Steel directed and controlled all of the actions in between, including Bennett's action of "dropping" the empty ore cars.

Second, it is beyond doubt that the accident occurred, not on Conrail's rail line, but on Weirton Steel's rail line. The deed and affidavits submitted, along with the discovery, clearly show that Track 28 is owned, operated, repaired, and maintained by Weirton Steel. In fact, Weirton Steel operates approximately 88 miles of rail lines, owns engines, and employs engineers, conductors, brakemen, and repairmen who repair its equipment on the premises of Weirton Steel. Unlike the situation in *Monongahela Railway Co. v. Black*, 235 F.2d 406 (4th Cir.1956), Weirton Steel operates its own independent railway system. Therefore, "the application of 'absolute liability' of the Federal Safety Appliances Act, 45 U.S.C. § 1, *et seq.*, is not appropriate." *Cavender v. Consolidated Rail Corp.*, 588 F.Supp. 98, 100 (S.D.W.Va. 1984).

Third, there is no credible evidence of causation. The discovery and affidavits show that Bennett was on the third car; that flesh and blood was found on the journal box of the fourth car; and the defective top step was on the thirty-fourth car, over 400 yards away. Furthermore, the ladder was not on the end where the brake is located, but on the opposite end of the ore car. The plaintiff argues that one report stated that the first ore car with blood on it was the fourth car from the *west* end, not the east end. However, the number on the car, PC5006, corresponds to the car number listed as the fourth car from the east end, while there is no such number with the PC prefix on any car twenty-eight cars of the east end. Furthermore, there is no reason for a brakeman, who is stopping 41 connected ore cars, to be on the top step of a ladder on the opposite side of where the brake is located on the 34th ore car. Plaintiff's allegation of causation is "mere speculation and mere possibility" creating no *genuine* issue of material fact. *Roehling v. Nat. Gypsum Co. Gold Bond Bldg.*, 786 F.2d 1225, 1229 (4th Cir.1986).

## NEGLIGENCE CLAIM AGAINST CONRAIL

The Court will now address whether the plaintiff's complaint, along with the discovery and affidavits submitted, constitute a negligence claim under West Virginia law. As with any negligence claim, the plaintiff must show (1) that there was a duty on the part of Conrail; (2) that Conrail breached that duty; and (3) that the breaching of that duty caused Bennett's

death. For the purposes of this motion for summary judgment, the Court will assume that the first two elements have been met only as a result of the Safety Appliance Act defect found on Conrail's ore car, namely, the defective top ladder tread on the "A" end of Car CR502257, the thirty-fourth car from the front. No duty exists in Conrail as to the condition and maintenance of Track 28, where the accident occurred. As discussed *supra*, Track 28 was owned, operated, maintained, and repaired by Weirton Steel. In other words, Track 28 was under the exclusive control of Weirton Steel. Conrail's only use of Track 28 was to pick up the empty ore cars, at the direction of Weirton Steel.

■ As to the third element, the Court finds that causation is not present. The basis for this finding is stated *supra* in this opinion and is incorporated herein by reference.

In conclusion, the Court is of the opinion that defendant Conrail's motion for summary judgment should be GRANTED. Accordingly, the claims against Conrail are DISMISSED.

## FELA CLAIM AGAINST WEIRTON STEEL

Weirton Steel moved for partial summary judgment as to the FELA claim in paragraph 10 of the Complaint. The basis of its motion is that it is not a common carrier engaged in interstate commerce as required by FELA, 45 U.S.C. § 51.

The plaintiff opposed the motion on the grounds that discovery has not been completed. At the time plaintiff filed her opposition, the case had been filed for almost two years. An additional two years have lapsed with no further opposition to Weirton Steel's motion. Plaintiff currently has a motion to compel Weirton Steel concerning discovery, however, the discovery requested pertains solely to the "Mandolitis" claim, not the FELA claim. Accordingly, the Court believes Weirton Steel's motion is ripe for ruling.

It is clear, that in order to be liable under FELA, a defendant must be a "common carrier by railroad ... engaging in commerce between any of the several States ..." 45 U.S.C. § 51. Weirton Steel claims that it is not a "common carrier by railroad," but an intra-plant railroad system, for its plant facilities. An affidavit by Weirton Steel's General Manager of Transportation states that Weirton Steel's rail system was (1) operated solely intra-plant and on the premises of Weirton Steel and was utilized solely for the purpose of loading and unloading goods purchased by and for the use of Weirton Steel; (2) that the Weirton Steel intra-plant railway was not utilized to transport goods or property for other individuals or concerns for hire nor did it receive remuneration for use of its rail system from any member of the public; and (3) that Weirton Steel's intra-plant railway was never held out to the public for hire nor were any contracts entered into with outside entities for rail services.

■ This evidence has not been challenged or refuted by the plaintiff. Based on the uncontroverted evidence, the Court finds that Weirton Steel was not a "common carrier by railroad." *See, Greethurst v. Bethlehem Steel Corp.*, 380 F.Supp. 638 (N.D.Ind.1974); *Duffy. v. Armco Steel Corp.*, 225 F.Supp. 737 (W.D.Pa.1964); *Kelly v. General Electric*, 110 F.Supp. 4 (E.D. Pa.1953); *cf, Lone Star Steel Co. v. McGee*, 380 F.2d 640 (5th Cir.1967). Accordingly, the Court GRANTS defendant Weirton Steel's motion for partial summary judgment and DISMISSES the FELA claim alleged in paragraph 10 of the complaint.

It is so ORDERED.