**Billy E. WILLIAMS, Plaintiff,**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY, Defendant.**

**No. CIV. A. 7:99cv0035.**

United States District Court, W.D. Virginia, Roanoke Division.

Dec. 18, 2000.

---

John Edward Basilone, Moody, Strople & Kloeppel, Ltd., Portsmouth, VA, Andrew K. Chafin, Moody, Strople & Kloeppel, Inc., Portsmouth, VA, for Billy E. Williams.

Leslie E. Hagie, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, for Norfolk Southern Ry. Co., Norfolk and Western Ry. Co.

### *MEMORANDUM OPINION*

KISER, Senior District Judge.

Plaintiff brings this action under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.*, to recover for injuries suffered while working for Defendant Norfolk Southern. Before me is Defendant's Motion for Partial Summary Judgment as to Count II in Plaintiff's Amended Complaint, and Plaintiff's Motion for Leave to File a Second Amended Complaint. Parties have briefed the issues and on November 6, 2000 a hearing was held, ripening the matters for disposition. Because I find that (1) Defendant's railcar was "in use" for the purposes of the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. §§ 20301 *et seq.*, and (2) Plaintiff has established a prima facie case that Defendant violated the FSAA, I will deny Defendant's Motion for Partial Summary Judgment. I also will deny Plaintiff's Motion for Leave to File a Second Amended Complaint.

## I.

Defendant does not dispute Plaintiff's account of the events giving rise to Count II in the Second Amended Complaint. Seen in the light most favorable to the non-movant Plaintiff, *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994), the facts are as follows:

On October 21, 1998, Plaintiff was the road conductor of a transportation crew assigned to retrieve ninety loaded coal cars from the Knox Creek Mine in Raven, Virginia. The crew took four locomotives from Defendant's rail yards in Richlands, Virginia, picked up a caboose in Alfredon, Virginia, and then proceeded to the Knox Creek mine. The loaded coal cars were on side-tracks located just off Defendant's line of road. One portion of the segments waiting to be assembled straddled a grade crossing and was kept "cut" to enable automobile traffic to proceed across the tracks.

When the crew arrived at the mine, they began to assemble the waiting coal hoppers into a single train. At one point during this process, the crew coupled the locomotives with twelve hoppers. The brakeman then attempted to release the hand brakes on the twelve cars, thereby enabling the locomotives to couple them with the remaining 78 hoppers. The hand brake on one of the cars, however, would not release. Plaintiff came to the brakeman's assistance, but likewise could not release the hand brake. Using Plaintiff's brake stick, the pair strained jointly to release the brake, but the stick slipped off the brake wheel. The recoil caused Plaintiff to fall into an adjacent loaded coal hopper, severely injuring his back.

Plaintiff filed the complaint present action on January 19, 1999, which he then Amended on December 23, 1999. On June 22, 2000 Defendant responded with a Motion for Partial Summary Judgment as to Count II in the Amended Complaint.

## II.

### A.

Summary judgment is appropriate where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw,* 13 F.3d at 791 (citations omitted); *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1129 (4th Cir. 1987). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, then no genuine issue exists for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B.

The FSAA provides in pertinent part that:

(a) ... railroad carrier may use or allow to be used on any of its railroad lines—

(1) a vehicle only if it is equipped with—

...

(B) secure sill steps and efficient hand brakes....

(5) a train only if—

(A) enough of the vehicles in the train are equipped with power or train brakes so that the engineer on the locomotive ... can control the train's speed without the necessity of brake operators using the common hand brakes for that purpose; and

(B) at least 50 percent of the vehicles in the train are equipped with power or train brakes . . . .

49 U.S.C. § 20302(a). The Act defines "vehicle" to include individual railcars. 49 U.S.C. § 20301.

This portion of the FSAA was recodified in 1994. The sections it replaced had read:

[I]t shall be unlawful for any railroad to use on its line . . . any train . . . that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose. [I]t shall be unlawful for any railroad subject to the provisions of this Act to haul, or permit to be hauled or used on its line, any car subject to the provisions of this Act not equipped with appliances . . . provided for in this Act, to wit: All cars must be equipped with secure sill steps and efficient hand brakes.

Formerly 45 U.S.C §§ 1, 11. In the Act providing for recodification, Congress specifically noted that it intended no change in meaning: "Certain general and permanent laws of the United States, related to transportation, are revised, codified, and enacted by subsections (c)-(e) of this section *without substantive change.*" Act of July 5, 1994, Sec. 1, 108 Stat. 745.

The primary issue before me is whether Defendant's railcar was "in use" under § 20302(a) of the FSAA. This is a question of law suitable for disposition on summary judgment. *See Crockett v. Long Island R.R.*, 65 F.3d 274 (2d Cir.1995) (interpreting "in use" provision of the Boiler Inspection Act).

■ The Fourth Circuit has had two occasions recently to analyze the "use" language of the FSAA. In *Deans v. CSX Transp., Inc.*, 152 F.3d 326 (4th Cir.1998), the court identified the two paramount factors to consider when determining whether a railcar is "in use" for the purposes of the FSAA: (1) the location of the train at the time of the accident; and (2) the activity of the injured party. *Id.* at 239 (citing *Pinkham v. Maine Cent. R.R. Co.*, 874 F.2d 875, 882 (1st Cir.1989) (interpreting Boiler Act)). The plaintiff in *Deans* was the conductor of a crew assigned to take a train from the defendant's rail yard in Grafton, West Virginia to Cumberland, Maryland. *Id.* at 328. He brought suit for neck and spine injuries suffered when he attempted to release a stuck hand brake on one of the defendant rail company's cars. *Id.* Although the railcars already had been assembled in the yard, the crew had three tasks to perform before setting out on its trip: (1) coupling the engines to the railcars; (2) releasing the hand brakes on the individual railcars; and (3) conducting a pre-departure air brake test. *Id.* At the time he injured himself releasing a hand brake, the plaintiff already had successfully coupled the engines. However, he had not yet conducted the final air brake test. *Id.* The defendant cited *Trinidad v. Southern Pacific Transp. Co.*, 949 F.2d 187 (5th Cir. 1991), and claimed that because the accident had occurred prior to the pre-departure air brake test, the subject railcar was not "in use" for the purposes of the FSAA.

The *Deans* court refused to follow the Fifth Circuit's pre-departure air brake inspection bright line rule for determining when a train or vehicle is "in use." Rather than looking to whether and when the pre-departure air brake test occurred, it held that "to determine whether a train is 'in use' for purposes of the FSAA, the primary factors we consider are where the train was located at the time of the accident and the activity of the injured party." *Deans*, 152 F.3d at 329. This examination, in turn, centered on the question of whether the train was being readied for motion on the main track, or instead simply was being prepared for repair or storage.

The *Deans* court determined that the railcar in question was "in use" for the purposes of FSAA. Concerning the location prong, the court observed that the

train was standing "on a track in the rail yard in preparation for imminent departure-not in storage or waiting to be moved into a repair location." *Id.* at 330. As to the activity prong, the court noted that plaintiff "as a conductor, was part of the transportation crew *and in no way involved in the repair or maintenance of the train.* It was his job to put the train in motion and, at the time of his injury, he was attempting to release the hand brakes to do exactly that." *Id.* (emphasis added). Accordingly, it held that the district court erred in granting the defendant summary judgment on the FSAA issue. *Id.*

*Phillips v. CSX Transp., Inc.,* 190 F.3d 285 (4th Cir.1999), was factually similar to *Deans,* but with a different outcome. In *Phillips,* the plaintiff brakeman injured himself while attempting to engage the handbrakes on a railcar.[1] 190 F.3d at 287. As in *Deans,* the accident occurred in defendant's rail yard on an assembled train awaiting a pre-departure inspection. *Id.* However, there also were important differences between the two cases. At the time of the accident, the train was still in control of the yard crew. *Id.* at 289–90. Moreover, the yard crew had not yet performed its standard mechanical examination of the safety appliances of the individual railcars—this inspection was to occur only after all the hand brakes were set. *Id.* at 290. It appears that this latter consideration was determinative. The court declared that "the purpose of the in use limitation is to give railcar operators the opportunity to inspect for and correct safety appliance defects before the FSAA exposes the operators to strict liability for such defects." *Id.* at 288 (citing *Angell v. Chesapeake and Ohio Ry. Co.,* 618 F.2d 260 (4th Cir.1980) ( "[T]he intent of the statute is to exclude from its coverage only such functions as are necessary to detect and correct those defective conditions for which absolute liability will be imposed.")). As the accident in *Phillips* occurred before the yard crew could conduct a final inspection of the safety appliance at issue—the handrail—the court held that the FSAA did not apply. It also noted other facts that distinguished it from *Deans:* the plaintiff was a member of the yard crew (not a member of the transportation crew), and the plaintiff was injured while attempting to apply the hand brake (thus stopping the train), rather than releasing the hand brake (thus preparing the train for departure). *Id.* at 290.

### C.

■ Defendant contends that the factual circumstances underlying Count II of Plaintiff's Amended Complaint do not constitute a violation of the FSAA because the events giving rise to Count II fell outside the ambit of the FSAA. Citing the Fourth Circuit's decision in *Phillips,* Defendant claims that the hand brake provisions of the FSAA do not apply because the railcar in the above-described incident was involved in a switching operation and thus was not "in use" for the purposes of the FSAA. Because a violation of the FSAA constitutes per se negligence under FELA, *Phillips,* 190 F.3d at 288, and because Plaintiff relies in part on the FSAA violation to establish Defendant's negligence under FELA, Defendant claims that it is entitled to summary judgment as to Plaintiff's FELA claim in Count II.[2]

Plaintiff counters that the narrow "in use" interpretation that the Fourth Circuit used in *Phillips* applies only to completed

---

1. He was not injured by the brake itself; rather, he was injured when the handrail he was using to pull himself up gave way, causing him to fall and injure his back. *Phillips,* 190 F.3d at 287.

2. Although a violation of the FSAA is a sufficient condition for a FELA claim, it is by no means a necessary condition. Thus, even if the FSAA did not apply to the instant claim, Plaintiff would survive summary judgment if he independently could demonstrate that Defendant was negligent vis-a-vis the brake. Nevertheless, because I find that the FSAA *does* apply, I need not determine whether Plaintiff has sufficiently made out a prima facie case of common law negligence.

trains, not to individual rail cars. Alternatively, he claims that even applying the location/activity test used by the *Phillips* court to determine when a rail car is "in use," the accident falls within the scope of the FSAA.

As a threshhold matter, I reject Plaintiff's contention that there is no "in use" requirement for railcars. The clear language of the statute dictates otherwise: "a railroad carrier *may use or allow to be used* ... a vehicle only if it is equipped with ... efficient hand brakes." 49 U.S.C. § 20302(a) (emphasis added). Thus, to determine whether the FSAA applies to the hand brake in the present case, I must determine whether the rail car was in use.

■ Using either the two-pronged analysis of *Deans* or the policy analysis of *Phillips*, it appears to me that the railcar in this case was "in use" for the purposes of the FSAA. To begin, the location factor elaborated in *Deans* strongly favors Plaintiff. As Plaintiff rightly emphasizes, the railcar was located on Defendant's road at the time of the accident. Unlike the rail car in *Phillips*, it was not in Defendant's yard awaiting inspection of its safety appliances. Nor was it awaiting repair or storage. Indeed, the location aspect appears more strongly to favor Plaintiff in this case than it aided the Plaintiff in *Deans*. In *Deans*, the subject train was simply awaiting imminent release on to the defendant's road. Here, the car already was *on* Defendant's road at the time of the accident,

manned by its transportation crew. It was not simply awaiting release onto the road.[3]

As for the activity factor, the gang handling the cars at the time of the accident was a transportation crew, not an inspection or repair crew. As in *Deans*, Plaintiff was the conductor of the transportation crew. His job was to retrieve the loaded coal cars from the customer mine, and move them to one of Defendant's yards. As in Deans, at the time of the accident, he was trying to release the hand brake in order to put the "mini-train" in motion. Unlike the plaintiff in *Phillips*, he was not a member of the yard crew assigned to inspect and assemble railcars at the defendant rail company's yard. It appears to me, therefore, that Plaintiff satisfies the "activity" prong of *Deans*. Thus, looking at the two factors enunciated by *Deans*, the accident in this case occurred while the railcar was "in use" for the purposes of the FSAA.

This conclusion is buttressed by the policy considerations undergirding the "in use" requirement. There appears no sound rationale for excluding application of the FSAA in this case. The coupling maneuver in which Plaintiff was engaged at the time of the accident was not preparatory to an inspection or repair of the railcar's safety equipment.[4] Thus, the stated purpose of the "in use" limitation—"to give railcar operators the opportunity to inspect for and correct safety appliance defects before the FSAA exposes the opera-

---

3. Viewed from the proper perspective, *Deans* and *Phillips* can be seen as line-drawing exercises delimiting the boundary between when a train is in a rail yard for service and repair (and is thus exempt from the FSAA—*Phillips*) and when it has crossed the threshhold of the rail yard and is instead in use on the road doing ordinary rail business (and is thus subject to the FSAA-*Deans*). Here, there is no question that the railcar in question was *not* in Defendants maintenance and repair yards. It falls well outside the boundary line established by *Deans* and *Phillips*. Thus, the present dispute presents a much easier case than either *Deans* or *Phillips*.

4. Plaintiff points out that it was customary to inspect the cars after assembling them into a mini-train. However, at oral argument Defendant explained that this type of inspection was simply a quick visual once-over that does not remotely approximate the detailed examination of safety equipment that was to be done in *Phillips*. It would not have disclosed the defect in the brake in this case. Although it is true Defendant *did* thoroughly examine the defective brake after the accident occurred, this examination was because of the accident, and would not have occurred but for it. Thus, Defendant cannot rely on it to claim the railcar was not "in use" under the *Deans* test.

tors to strict liability for such defects," *Phillips*, 190 F.3d at 288, is not implicated. The switching operation in which Plaintiff was engaged at the time of the accident was simply a routine operation in the use of the railcars on defendant's roads, not an inspection period that should be protected by a safe harbor. If Defendant's arguments hold sway, this would render the "efficient hand brakes" provision of the FSAA nearly useless. Hand brakes are used only during the coupling and uncoupling of rail cars—air brakes are used for stopping a completed train. Thus, if the "efficient hand brakes" provision of the FSAA does not apply during the disassembly and assembly of trains, it is difficult to see when it would *ever* apply. Assuming Congress did not intend to enact a nullity, this interpretation cannot be correct.

Defendant relies heavily on language in *Phillips* that states "the FSAA does not apply to train cars in switching operations." *Id.* at 288 (citing *U.S. v. Seaboard Air Line R.R. Co.*, 361 U.S. 78, 80, 80 S.Ct. 12, 4 L.Ed.2d 25 (1959)). I think that this quote is an overly broad statement that is inessential to the court's decision in *Phillips*. Indeed, it appears to be a misstatement of the holding of *Seaboard*. *Seaboard* involved a violation of the FSAA requirements concerning power air brakes, not hand brakes. The FSAA requires all *trains* to have power air brakes. Individual rail cars are not separately required to have power air brakes, though they are required to have hand brakes. The ques-

tion before the Court in *Seaboard* was whether the movement of locomotives and cars from one rail yard to another—in the process traversing several road crossings—constituted "train movement" for the purposes of the FSAA. In setting out the rule for when a string of engines and cars counted as a "train" for FSAA purposes (thus implicating the air brake provisions), the Court held that " 'switching operations' were not 'train' movements within the meaning of the Act." 361 U.S. at 80, 80 S.Ct. 12. More to the point, the Court in *Seaboard* did not hold that train *cars* were outside the FSAA during switching operations. Thus, the Fourth Circuit's insertion of "cars" into "does not apply to train cars in switching operations," 190 F.3d at 289, distorts the holding of *Seaboard*.[5] Moreover, this broad language was inessential to the holding of *Phillips*. As the court itself emphasized, the decision in *Phillips* hinged on the location and activity factors enunciated in *Deans*. For these reasons, I think the "switching operation" quote in *Phillips* that Defendant relies on should be treated as a dictum, not a holding.

This analysis of *Phillips* is confirmed by an examination of *Monongahela Ry. Co. v. Black*, 235 F.2d 406 (4th Cir.1956), a case virtually on all fours with the instant case.[6] In *Monongahela*, plaintiff was the conductor of a road crew who was injured at a side track alongside a coal mine serviced by the defendant railroad. *Id.* at 406–07.

---

**5.** In footnote 3 of *Phillips*, the Fourth Circuit addresses briefly the question of whether the automatic coupler and grab iron provisions of the FSAA (located in the same portion of the FSAA as the efficient hand brake provision) have broader application than the air brake provision. It quotes *United States v. Northern Pacific Ry. Co.*, 254 U.S. 251, 252, 41 S.Ct. 101, 65 L.Ed. 249 (1920) as stating: "A moving locomotive with cars attached is without the provision of the act [i.e., the FSAA] only when it is not a train; as where the operation is that of switching, classifying and assembling cars within railroad yards for the purpose of making up trains." This seems to be saying that a railcar is not in use during switching operations. It is important to note,

however, that *Northern Pacific* concerned only the *air brake* provision of the FSAA, which—as I indicated above-applies only to "trains." Thus, the case holds only that a *train* is not in use (because it is not properly speaking a "train") during switching operations. Any suggestion in *Northern Pacific* as to the applicability of the FSAA to *railcars* during switching operations is therefore dicta.

**6.** This case interpreted the prior codification of the hand brake provision of the FSAA (then located at 45 U.S.C. § 11). However, as the 1994 recodification intended no substantive changes, its holding is still good law.

As in the present case, the injury was due to a defective hand brake on a rail car. *Id.* Plaintiff was injured when, using gravity, the individual car was sent down from a coal loading tipple to the main tracks below. *Id.* The hand brake failed to slow the descent, causing the car to crash into standing cars which, in turn, lurched forward into plaintiff. *Id.* at 408. The trial court held that the cars on the side track were in use for the purposes of the FSAA. Defendant appealed, arguing that "because the offending car was on a side track, it was not in use on appellant's line." *Id.* at 407. The Fourth Circuit disagreed. It refused to find that "a railroad is relieved of its responsibility to provide safe appliances when it places one of its cars on a side track for the sole purpose of having it loaded with freight to be hauled by it." *Id.* at 408. Instead, it found that "if the car in question was being used at the time of plaintiff's injury as part of appellant's business in interstate commerce, as it undoubtedly was, the Safety Appliance Act was applicable." *Id.* Although the court did not emphasize this fact, the accident clearly occurred during the assembly of a train from cars waiting at a side track. By holding that the FSAA applied, the court therefore implicitly acknowledged that the hand brake provisions of the FSAA apply during switching operations that occur at side tracks servicing rail customers.[7]

Indeed, the facts of *Monongahela* could not more closely mirror this case. As in that case, Plaintiff was injured while assembling a train from filled coal cars that occupied side tracks alongside the coal company. The fact that the train was not completely assembled did not bar application of the hand brake provisions of the FSAA in *Monongahela;* thus, it should not

bar its application here. For these reasons, I find that the railcar on which Plaintiff injured himself was "in use" for the purposes of the FSAA.

■ Having determined that the FSAA applies, I must ascertain whether Plaintiff has made out a prima facie case that Defendant violated a provision of that act. Plaintiff has provided evidence that the brake in question was stuck fast, due in part to a rusty chain. Stuck hand brakes qualify as "inefficient" under the FSAA. *See, e.g., Kleysteuber v. Pittsburgh, C & Y Ry. Co.,* 118 F.Supp. 390 (W.D.Pa.1954). Therefore, Plaintiff has established a prima facie case that Defendant violated the FSAA. Because a violation of the FSAA is per se negligence under FELA, *Phillips,* 190 F.3d at 288, Plaintiff has established a prima facie case for a cause of action under FELA. Accordingly, I will deny Defendant's motion for Summary Judgment on Count II of the Amended Complaint.

### III.

Plaintiff's original complaint contained only allegations pertaining to the October 21, 1998 incident wherein he was injured trying to release a defective handbrake on one of Defendant's railcars. On December 23, 1999, I permitted Plaintiff to file an Amended Complaint that added a second count concerning a separate but similar accident that allegedly occurred on April 8, 1997 (likewise seeking compensation for a hand brake accident). Plaintiff now asks for leave to file a Second Amended Complaint, detailing a *third* incident in which he was injured trying to release a defective hand brake on one of Defendant's railcars. This incident allegedly occurred on June

---

**7.** Defendant attempts to distinguish *Monongahela* from the instant case on the grounds that the defective railcar in that case was under its own motive power and could be controlled only by using the handbrake, whereas the car in question in the instant case was part of a 13 car "minitrain" controlled by a locomotive and air brakes. This seems to me to be a distinction without a

difference. In both cases, the cars were engaged in "switching operations" that took place outside of the respective defendants' rail yards. (Tellingly, Defendant does not argue that the railcar in *Monongahela* was not engaged in a switching operation.) In neither circumstance were the cars segregated for the purposes of inspection, repair, or storage.

17, 1997. Plaintiff contends that the amendment will not unfairly prejudice Defendant. He argues that he is adding the count to preempt the defense argument that Plaintiff's injuries pre-dated the October 21, 1998 incident. Defendant contests this motion, decrying Plaintiff's tactics as "a rolling barrage of unconnected incidents designed to prejudice defendant by cluttering this case with numerous assertions in hopes that a jury will buy one of the theories of causation when plaintiff, himself, cannot identify a specific incident."

 Once a responsive pleading is served, Rule 15(a) permits a party to amend its pleadings only by leave of court or written consent of the adverse party. Fed.R.Civ.P. 15(a). However, it specifies that "leave shall be freely given when justice so requires." *Id.* A motion to amend may be denied when it has been unduly delayed and when allowing the motion would prejudice the nonmovant. *See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 941 (4th Cir.1995); *Frank M. McDermott, Ltd. v. Moretz,* 898 F.2d 418, 421 (4th Cir.1990). Courts have found that amendments that "result in a lengthier and more complicated trial" may sufficiently prejudice the adverse party as to justify a refusal to permit the amendment. *Kuhn v. Philadelphia Elec. Co.,* 85 F.R.D. 86, 88 (E.D.Pa.1979); *Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc.,* 398 F.Supp. 1047, 1056 (E.D.N.Y.1975).

I find that Plaintiff's Second Amended Complaint has been unduly delayed and that allowing it to be filed would prejudice Defendant. Plaintiff already has been deposed twice. It was only during the latter portion of the second deposition that Plaintiff disclosed the existence of the June 17, 1997 incident that he now seeks to include in the Second Amended Complaint. Permitting Plaintiff to amend his complaint at this late stage in the litigation would require Defendant to undertake an entirely new course of discovery to meet the allegations contained in the Second Amended Complaint. Plaintiff offers no satisfactory explanation for why he waited nearly 18 months to add the June 17, 1997 incident to his complaint, or for why he did not include this incident in his Amended Complaint. Furthermore, adding a third unrelated incident to the instant action would complicate the trial and confuse the jury. Plaintiff already asks the jury to ascertain liability and trace causation for two separate accidents. This places high enough demands on the factfinder. Further tangling the inquiry by adding yet another incident would result in a lengthier, more complicated, and less focused trial. For these reasons, I deny Plaintiff's Motion for Leave to File a Second Amended Complaint.

## IV.

For the foregoing reasons, I am of the opinion that Defendant's Motion for Partial Summary Judgment should be DENIED, and Plaintiff's Motion for Leave to File a Second Amended Complaint likewise should be DENIED. The clerk is directed to send a copy of this Memorandum Opinion to all counsel of record. An appropriate Order shall this day issue.